**BROADCAST CORPORATION
OF GEORGIA**

v.

**Herbert C. BROADFOOT, II, as Trustee
for the Estate of Subscription
Television of Greater Atlanta.**

**Civ. No. C85–2858.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 11, 1985.

R. Wayne Thorpe, Alston & Bird, Atlanta, Ga., for plaintiff.

David W. Pollard, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This matter is now before the court on appeal from the order and judgment entered by the Honorable William L. Norton, Jr., United States Bankruptcy Judge for the Northern District of Georgia. The Trustee for the debtor, Subscription Television of Greater Atlanta ("Subscription TV") appeals Judge Norton's order allowing an administrative claim in favor of Broadcast Corporation of Georgia ("Broadcast") in the amount of $156,166.20. Broadcast appeals from Judge Norton's subsequent order amending his opinion to dismiss a counterclaim of the Trustee without prejudice rather than with prejudice.

The facts of this case are not in dispute on appeal, and are therefore set forth below as summarized from Judge Norton's opinion.

FACTS

Broadcast's administrative claim is based primarily upon a "Contract for the Provision of Subscription Television" between Broadcast and the Debtor, Subscription TV ("the Contract"). The Contract governed Broadcast's obligation to provide a scrambled television signal to the Debtor during certain hours of each day, in return for payment by Subscription TV. These charges are levied for "Primary Lease Time," under the terminology of the Contract, and make up the bulk of Broadcast's claim. Broadcast also has made an administrative claim for charges incurred by the Trustee and Subscription TV, as debtor in possession, for the use of editing equipment.

The Debtor was engaged in the operation of a subscription television service, which was still operating at the time Subscription TV converted its Chapter 11 case into a Chapter 7 case. The Trustee was appointed on July 6, 1983, and was authorized by the court to continue Subscription TV's operations. For a 17-day period, he did so. In particular, he provided video tapes to Broadcast, who scrambled and transmitted them in accordance with the Contract. During this time, Broadcast's equipment was also used for editing.

After this 17-day period, the Trustee no longer supplied video tapes to Broadcast for transmission, and no transmission was conducted by Subscription TV to its customers. The Trustee notified Broadcast that he would no longer be using its signal. However, the Trustee did not reject the Contract, which is an assumable, executory agreement. Instead, the Trustee retained the Contract for a full 60 days after the date of the conversion to Chapter 7. Under the contract, Broadcast was obligated to keep the signal available exclusively to Subscription TV.

During the 60-day period, the Trustee attempted to remarket the Contract at a profit, and dealt with some potential purchasers. The Trustee never rejected the Contract with Broadcast during that period. Instead, the Contract was "deemed rejected" at the end of the 60 days under 11 U.S.C. § 365(d)(1). At that time, Broadcast regained the right to market the TV signal which was the subject of the Contract. Broadcast promptly did so, and immediately received substantial revenues.

On November 3, 1983, Broadcast filed its motion seeking the allowance of administrative expenses under 11 U.S.C. § 503(b)(1)(A). In its motion, Broadcast requested payment for primary lease time and editing charges allegedly incurred by the estate while this case was being administered under Chapter 11 and Chapter 7. The Trustee filed an objection denying liability, and a hearing was set for December 6, 1983.

Shortly before the hearing, the Trustee amended his prior response to assert a counterclaim. The counterclaim adopted by reference the allegations contained in an eight-count complaint previously filed by the Debtor in the Superior Court of Fulton County, Georgia. The state court action had been removed to the Bankruptcy Court in July of 1983, but was subsequently remanded to the Superior Court on December 5, 1983.

At the hearing, Broadcast claimed a priority expense for the full 60 days during which the Trustee kept the Contract executory and subject to assumption. The Trustee conceded that an administrative claim should be allowed for the 17-day period during which he actually used the signal, but denied that an administrative claim would be justified for the balance of the 60-day period. Judge Norton also heard argument from the parties on the claimed editing charges and certain offsets asserted by the Trustee.

On January 28, 1985, Judge Norton issued an opinion allowing Broadcast's claim for primary lease time for the full 60 days. The order also allowed Broadcast's claims for editing charges, and preconversion

claims under Chapter 11, which are not disputed in this appeal. Judge Norton also granted the Trustee an offset for rent and phone service consistent with the agreements made between the Debtor and Broadcast. Finally, the opinion stated that the Trustee's counterclaim would be dismissed with prejudice, and judgment entered in favor of Broadcast, because the Trustee had introduced no supporting evidence.

In response to a motion by the Trustee, the Judge subsequently amended his opinion to strike the term "dismissed with prejudice" and insert the following:

> The counterclaim is dismissed without prejudice as the issues have been remanded in another proceeding for adjudication by the Superior Court of Fulton County, Georgia.

Order of March 20, 1985, page 2.

### January 28 Order

The Trustee now appeals Judge Norton's January 28, 1985 order to the extent that (1) Broadcast's priority claim for primary lease time was allowed for the full 60 days, (2) the entire offset for phone charges sought by Trustee was not deducted, and (3) no offset was allowed for alleged debt obligations to third parties.

Primary Lease Time

In directing that the Trustee pay Broadcast its fee for the television signal for the full 60 days, Judge Norton found that the Trustee's retention of the contract for that period was a use of Broadcast's assets in preservation of the estate. 11 U.S.C. § 503(b)(1)(A) states that an administrative expense shall be allowed for "the actual, necessary costs and expenses of preserving the estate ..." In particular, the Judge focused on the Trustee's own testimony that he kept the Contract assumable for the full 60-day period in the hope that a sale of the Debtor's business could be arranged, and that he did receive expressions of interest from at least two parties. The Judge also noted that Broadcast had re-

peatedly requested the Trustee to make an early determination as to rejection or assumption of the contract.

The Trustee had argued that the estate was actually and necessarily benefited only for the 17-day period, during which he used the signal to broadcast to its customers and received income in return. The Trustee contended that under 11 U.S.C. § 365(b)(1), he has an exclusive, unfettered right for 60 days to decide whether to assume or reject an executory contract. The Trustee also asserted that under 11 U.S.C. § 362(d)(1), neither a party in interest nor the court can force him to make a decision to assume or reject during that period. Judge Norton agreed, but stated:

> That discretionary right of § 365(b)(1) does not give the trustee a free ride to use the property or right during that period of decision without reasonable compensation to the owner-lessor.

Order of January 28, 1985, page 9. The court then went on to award Broadcast its full payment under the Contract for each of the 60 days.

The Bankruptcy Code provides that the trustee generally may assume or reject any executory contract or unexpired lease of the debtor, subject to the court's approval. 11 U.S.C. § 365(a). In a Chapter 7 liquidation case, if the trustee does not assume or reject an executory contract or unexpired lease within 60 days after the order for relief, such contract or lease is deemed rejected. § 365(d)(1). In a Chapter 11 reorganization case, the trustee may assume or reject at any time before the confirmation of a plan, but at any party's request the court may order the trustee to make that decision within a shorter period of time. § 365(d)(2).

It is well established that once an executory contract or lease is rejected, the creditor may file an administrative claim for the "reasonable value of the use or occupation" by the trustee of the creditor's assets during the time before rejection. 2 Collier on Bankruptcy ¶ 365.03 at 365–24; [1] *Phila-*

---

**1.** *See also Palmer v. Palmer,* 104 F.2d 161 (2d Cir.), *cert. denied,* 308 U.S. 590, 60 S.Ct. 120, 84

*delphia Co. v. Dipple,* 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941). The cases in this area vary widely, however, in their interpretations of how such a claim should be valued. Most of these cases have dealt with unexpired leases and the trustee's use of the claimant's real estate.

Some cases have held that the trustee should be liable only to the extent of the actual benefit received by the estate from the use of the property. *See American A. & B. Coal Corp. v. Leonardo Arrivabene S.A.,* 280 F.2d 119 (2d Cir.1960).[2] Other cases have held that the trustee's particular use of the property should not dictate the amount of the claim to be paid, but instead a fair market value for the lease of the property should be used. *See Kneeland v. American Loan & Trust Co.,* 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890); *Diversified Services, Inc. v. Harralson,* 369 F.2d 93 (5th Cir.1966).[3] In theoretical approach, the former line of cases focuses on the avoidance of unjust enrichment to the estate, while the latter line of cases takes into consideration the claimant's loss once a benefit to the estate has been established.

In this case, Judge Norton relies primarily on *In Re Fred Sanders Company,* 22 B.R. 902, 903 (Bkcy.E.D.Mich.1982). In *Sanders,* the executory contract concerned the lease of certain motor vans. During the pre-rejection period, the trustee had retained possession of the vans but had not actually driven or otherwise used any of them. After the trustee rejected the contract, the owner of the vans filed an administrative claim for the pre-rejection period at the full contract rate. The trustee objected to the claim on the grounds that the estate had not actually used or benefited from the vans.

In rejecting the trustee's argument, the *Sanders* court focused on certain cases holding that the trustee's particular use of the asset should not control the amount of the administrative claim to be paid. *E.g., Kneeland,* 136 U.S. at 101, 10 S.Ct. at 954; *Dayton Hydraulic Co. v. Felsenthall,* 116 Fed. 961 (6th Cir., 1902); *Fleming v. Noble,* 250 Fed. 733 (1st Cir.1918); *In Re Millard's, Inc.,* 41 F.2d at 499; *Matter of Datamation,* 1 BCD 1698 (Bkcy.S.D.N.Y. 1975); *Matter of Florida Airlines, Inc.,* 17 B.R. 683 (Bkcy.M.D.Fla.1982).

However, the *Sanders* court went beyond that principle to suggest that a party to an executory lease or contract with the debtor is *entitled* to administrative payment for the pre-rejection period at the contract rate, regardless of whether the trustee put the asset to *any* use whatsoever. The court stated:

> The lessor has a right to assume that until a debtor rejects a lease, the leased property is being used for the purpose for which it was leased and that the debtor will pay the reasonable value of the property measured by such use.

22 B.R. at 907. This rule would essentially eliminate any requirement of benefit to the estate, and would allow administrative claims based solely on compensation of the claimant for his loss during the pre-rejection period.

The propriety of this *"Sanders* Rule" is put squarely at issue in this case. It is undisputed that during the last 43 days of the 60-day period, no services were rendered by Broadcast to the estate, nor were any of Broadcast's assets used or possessed by the Trustee. Nevertheless, Judge Norton concluded that Broadcast was entitled to a priority administrative

L.Ed. 494 (1939); *In Re Cochise College Park, Inc.,* 703 F.2d 1339, 1354 (9th Cir.1983); *In Re By-Rite Distributing Inc.,* 47 B.R. 660, 664 (B.R. D.Utah 1985); *In Re GHR Energy Corp.,* 41 B.R. 668, 670 (Bkcy.D.Mass.1984); *In Re Rhymes, Inc.,* 14 B.R. 807 (Bkcy.D.Conn.1981).

**2.** *See also In Re United Cigar Stores,* 69 F.2d 513 (2d Cir.1934); *Matter of Strause,* 40 B.R. 110 (Bkcy.W.D.Wisc.1984); *In Re Ram Manufactur-*

*ing Co.,* 38 B.R. 252 (Bkcy.E.D.Pa.1984); *In Re Cardinal Export Corp.,* 30 B.R. 682 (Bkcy.E.D.N. Y.1983); *Rhymes,* 14 B.R. at 809.

**3.** *See also In Re First Research,* 457 F.2d 331 (5th Cir.1972); *In Re Millard's, Inc.,* 41 F.2d 498 (7th Cir.1930); *In Re Tucci,* 47 B.R. 328 (Bkcy.E. D.Va.1985); *In Re Royal International Corp.,* 30 B.R. 750 (Bkcy.W.D.Ky.1983).

claim, at the contract rate, for each day that the Trustee did not assume or reject the contract. For the reasons set forth below, the court declines to adopt such a rule. The court therefore holds that the mere failure of a trustee to assume or reject an executory contract or lease during the statutory 60-day period, without actual use or benefit from any underlying assets, does not constitute an administrative expense of the estate.

First, the *Sanders* Rule is contrary to the relevant statutory description of administrative expenses. 11 U.S.C. § 503(b)(1)(A) provides that such expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...." The use of the words "actual" and "necessary" indicate that the estate must accrue a real benefit from the transaction for which the claim is being filed. The mere potential of benefit to the estate does not satisfy this requirement. *In Re Kessler*, 23 B.R. 722, 724 (Bkcy.S.D.N.Y.1982).

The primary rationale for this limitation is the need to minimize the administrative dispersal of the estate's limited assets, in order to protect the unsecured creditors' interests. This is particularly important in the Chapter 7 context, where the estate is to be liquidated rather than rehabilitated. Since the goal in a Chapter 7 case is to "cash out" the bankrupt entity, rather than continue its operations, Chapter 7 is more concerned with maximizing the size of the estate to be distributed than with the Chapter 11 goal of inducing third parties to contribute towards the continued operation of the business. *See In Re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976) (application of administrative expense provision in Chapter 11 context is primarily a means of implementing the rehabilitation of insolvent businesses).

Furthermore, the threshold requirement that the expense be "necessary," *i.e.*, of benefit to the estate, prevents creditors seeking priority over their fellow unsecured creditors from taking advantage of a troubled entity. *Ram*, 38 B.R. at 254. Thus, the administrative expense scheme does not focus in the first instance on whether a creditor sustained a loss during this period, but on whether the estate has received an actual benefit.

Second, the cases cited in *Sanders* support neither the conclusion reached in that case nor Judge Norton's holding in this matter. Although those cases do stand for the proposition that the trustee's particular use of the asset does not dictate the amount of the administrative expense to be paid, they do not indicate that the trustee need not use the asset at all to be held liable. In each of those cases, the court found that the asset was being used or possessed for the benefit of the estate for the relevant period of time.[4] Those cases were essentially not disputes as to *whether* an administrative claim should be paid; the relevant issue was whether or not the trustee should be liable according to the *extent* or *manner* of his use of the asset during that period.

For example, in *Fleming v. Noble*, the trustee had used the leased property for a different purpose than that contemplated by the contract. The court held that once the trustee had used the property for the benefit of the estate, the amount which he should then have to pay as a priority claim should not depend on the particular use to which he put the asset. 250 F. at 735. *In Re Millard's*, *Datamation*, and *Florida Air Lines*, *supra*, are to the same effect.

In *Kneeland*, the trustee took possession of a number of railroad cars covered by an executory contract, but only operated a few of them. The Supreme Court held that the cars' owner had a valid administrative claim based on the reasonable rental value of all the cars, and not merely on the few cars operated. 136 U.S. at 101, 10 S.Ct. at 954. The Court noted that priority should

---

**4.** Even in *Sanders* itself, the trustee at least possessed the vans for which the claim was sought. Here, however, the Trustee neither used nor possessed any asset of Broadcast after the 17-day period ended.

be accorded to rental claims for "personalty thus taken possession of and operated for the benefit of the realty," *id.* at 100, 10 S.Ct. at 954, and concluded that the bankruptcy court

> ... may justly assume that what had been contracted for was necessary, and *if the trustees ask that all may be taken possession of* it may act upon that as a declaration that all is necessary, and that rental value is to be paid for all.

*Id.* at 101, 10 S.Ct. at 954 (emphasis added).

The cited case which comes closest to supporting the *Sanders* Rule is *Dayton Hydraulic Co. v. Felsenthall,* 116 Fed. 961 (6th Cir.1902). In *Dayton,* the court held that the estate was liable for pre-rejection rent, even though the trustee did not actually operate or possess the paper mill which was the subject of the unexpired lease. However, the court *Dayton* found that the estate had sustained an actual financial benefit from the mill's remaining closed, because the value of the other properties in the estate had increased as a consequence. *Id.* at 967. In this case, there was neither constructive possession of an asset nor any actual value added to the estate.

The third reason that the *Sanders* Rule should be rejected in this context is that the results of its application are illogical and contrary to the structure of the bankruptcy system as set out by Congress in the Bankruptcy Code.

As a preliminary matter, the conclusion by Judge Norton that the Trustee must pay Broadcast for the "option" of rejecting or assuming the contract is illogical because that "option" is not an asset of the creditor. Instead, it is a power granted to the Trustee under the bankruptcy laws. *Rhymes,* 14 B.R. at 809. Broadcast does not have a rational claim that any of its assets or services have been used in the administration of the estate, where the Trustee merely exercised his statutory authority under 11 U.S.C. § 365.

Furthermore, the application of the *Sanders* Rule in the Chapter 7 context clashes with Congress' grant to the Chapter 7 trustee of an uncontested 60 days to make the assumption/rejection decision on executory agreements. 11 U.S.C. § 365(d)(1). The incorporation of an automatic rejection mechanism at the end of the 60 days was intended to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate." House Report No. 95–595, p. 348, reprinted at 1978 U.S.Code Cong. & Ad.News 5787, 6304. *See also In Re Standard Furniture,* 3 B.R. 527, 530 (Bkcy.S.D.Cal.1980). The automatic 60-day rejection also compels the trustee to investigate and prepare to assume contracts or leases which are advantageous to the estate. During that relatively short period, the trustee should not be subjected to the pressure of incurring heavy priority claims against the estate for every day he deliberates. *American A. & B. Coal Corp. v. Leonardo Arrivabene S.A.,* 280 F.2d 119 (2d Cir.1960).

Finally, because the presumed value of the contract use is the rate negotiated in the contract itself, absent "convincing" evidence to the contrary,[5] the *Sanders* Rule effectively allows the contracting party to collect pro rata contract damages in the form of a priority claim. However, the Bankruptcy Code provides that damages for the rejection of an executory contract are to be treated as general unsecured claims, not as priority claims. 11 U.S.C. § 365(g)(1); *Acme Precision Bldg. v. Dayton Forging,* 23 B.R. 79, 84 (Bkcy.S.D.Ohio 1982). The *Sanders* Rule therefore distorts Congress' allocation of the estate among the creditors, by giving unwarranted priority to contract creditors over non-contract creditors.

The court therefore finds that the mere failure by a Chapter 7 trustee to reject or assume an executory contract during the 60-day period is not a use for which the nondebtor contracting party is entitled to priority compensation. Regardless of the method of calculating the amount of the claimed expense, the court concludes

---

5. *Sanders,* 22 B.R. at 907. *See also Green v.*   *Finnigan Realty Co.,* 70 F.2d 465 (5th Cir.1934).

that there must be an actual, concrete benefit to the estate before a claim is allowable at all. No such benefit accrued to the estate in this case. Broadcast is therefore only entitled to an administrative claim for the 17 days during which the trustee operated and used Broadcast's services.

As one court stated in denying an administrative claim:

Although the result appears to be harsh to the [claimant], it must be borne in mind that in any bankruptcy, all creditors of the debtor suffer in that they receive less than what is properly owed them. One of the functions of bankruptcy is simply to ensure equal distribution among all creditors of the available assets of the debtor in accordance with the hierarchy laid down by Congress. To recognize [this claim] in full would mean that some other general creditor would necessarily receive less.

*In Re Cardinal Export,* 30 B.R. 682, 684 (Bkcy.E.D.N.Y.1983). Accordingly, Judge Norton's order is reversed as to prime lease time.

Phone Service and Third Party Debts

■ Judge Norton's findings as to the offsets sought by the Trustee for phone service and debt payments to third parties will be affirmed. Judge Norton's conclusion that $600 is an appropriate offset for phone service provided to Broadcast is adequately supported in the record. His conclusion that the Trustee may not offset alleged debt payments which the Trustee never actually made on Broadcast's behalf is also correct.

Calculation of Allowable Claim

Since the Trustee concedes that the full contract rate is properly applicable to each of the 17 days that he used Broadcast's services, the appropriate administrative claim for primary lease time can be calculated by dividing the monthly contract rate ($79,166.67) by 30, then multiplying by 17 to reach a total of $44,861.11. To this amount should be added the uncontested claims for editing ($1,650.00), less the off-

sets for secretarial ($112.65), rent ($2,804.49) and phone ($900), plus the uncontested Chapter 11 administrative expenses ($23,844.61), for a total of $66,538.58.

*March 20 Order*

Broadcast has also appealed Judge Norton's March 20, 1985 order amending his earlier opinion which dismissed the Trustee's counterclaim. Judge Norton struck the term "dismissed with prejudice" and inserted the following: "The counterclaim is dismissed without prejudice as the issues have been remanded in another proceeding for adjudication by the Superior Court of Fulton County, Georgia." Order of March 20, 1985, page 2.

In explanation, Judge Norton stated that he had not intended to dismiss the counterclaim with prejudice in his earlier order and was therefore amending that order to properly reflect his true intention. Broadcast contends that the counterclaim was properly before the court at the time judgment was entered on it in Broadcast's favor, and therefore the Judge's earlier order should stand as entered.

■ The court does not agree. The March 20 order indicates that Judge Norton intended to dismiss the counterclaim without prejudice either at the time he remanded the identical issues to the Superior Court on jurisdictional grounds, or at the entry of judgment. The counterclaim issues were not litigated at the hearing. Broadcast did not appeal Judge Norton's order of remand, and will not be permitted to do so by this means. Judge Norton's amendment of his earlier order to reflect his true intention did not constitute an abuse of discretion. Fed.R.Civ.P. 59(e). The March 20 order will therefore be affirmed.

*Summary*

Judge Norton's January 28, 1985 order is REVERSED IN PART and AFFIRMED IN PART as set forth above. Broadcast will be allowed an administrative claim against the estate in the amount of $66,538.58.

Judge Norton's March 20, 1985 order is
AFFIRMED.