In re **PICKENS–BOND CONSTRUCTION CO., Kelley–Nelson Construction Co., Machen Construction Co., Valark Construction Co., Apartment Developers, Inc., Merit Masonry, Inc., Debtors.**

**Bankruptcy Nos. LR 87–810 F to LR 87–815 F.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Jan. 19, 1988.

Rose Law Firm, P.A., by Thomas Thrash and Stephen N. Joiner, Little Rock, Ark., for debtors.

Hankins, Capps, Hicks & Madden by Stuart W. Hankins, N. Little Rock, Ark., for New England Merchants Leasing Corp.

Wright, Lindsey & Jennings by John William Spivey, Little Rock, Ark., for Worthen Bank & Trust Co., N.A.

Hopkins & Erwin by Karen L. Queen, Little Rock, Ark., for Computers-for-Rent.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Before the Court is the request for payment of administrative expense for rent and contractual liability on lease filed by New England Merchants Leasing Corporation B-3 of Boston, Massachusetts (New England) in the above cases. In its request, New England has asserted a claim in the total amount of $154,546.92, arising from a lease agreement between one of the debtors, Pickens–Bond Construction Co. (Pickens–Bond), and New England, dated December 23, 1982 for the rent of a "Fairchild Aircraft Corporation Model III C (Merlin 1982) (new) aircraft." New England noted in its request that part of the claim in the amount of $88,981.56 arose pre-petition based on the parties' lease agreement for rental of the aircraft for 114 days at $780.54 per day prior to filing. New England has also requested payment of an administrative claim in the amount of $65,565.36 for an 84 day period from April 24, 1987, the date of the debtors' bankruptcy filing, until July 17, 1984, the effective date of the debtors' confirmed plans. Here, the Court is concerned only with the request for administrative expense in the amount of $65,565.36.

Objections to payment of the administrative claim were filed by Computers-For-Rent (Computers) and Worthen Bank & Trust Co., N.A. (Worthen), creditors in the debtors' cases. Computers and Worthen have objected to payment of New England's claim as an administrative expense prior to payment of other administrative expenses in the cases and contrary to the confirmed plans of the debtors. The debtors also have filed an objection to the payment of New England's $65,565.36 claim as an administrative expense on the grounds that New England is not entitled to an administrative claim because the debtors never used the aircraft after filing and the debtors' estate never received a benefit from the aircraft.

The matter came on for hearing November 24, 1987. At the hearing, the parties involved agreed to submit written stipulations of facts and briefs regarding New England's entitlement to an administrative claim.[1]

New England, Computers, Worthen and the debtors submitted the following stipulated facts, which the Court adopts.

## STIPULATION OF FACTS

Pickens–Bond Construction Company (the "Debtor") filed it's Chapter 11 Petition on April 24, 1987. The Debtor had entered into an Aircraft Lease Agreement with New England Merchants Leasing Corporation B-3 (the "Lessor") dated December 23, 1982 (the "lease") for the lease of a new Fairchild Aircraft Corporation Model III C (Merlin) 1982 (the "aircraft") for a basic term of ten (10) years. The Plan of Arrangement (the "Plan") submitted by the debtor was filed on May 12, 1987 and Section V. states:

### V.

*Provisions for Rejection of Executory Contracts*

1. The Debtor hereby reaffirms and assumes the following executory contracts and unexpired leases:

contained discussions and analyses of relevant cases.

---

1. The Court notes that the parties provided the Court with thorough, well-written briefs which

A. Those Uncompleted Contracts listed on Exhibits 1 and 2 of the Assets Sale Agreement;

B. Those leases listed on Exhibits 8 and 11 of the Assets Sale Agreement;

C. Those Completed Bonded and Unbonded Contracts listed on Exhibits 3 and 4 of the Assets Sale Agreement.

2. All other executory contracts and unexpired leases which exist between the Debtors and any individual or entity, whether such contracts or lease be in writing or oral, which have not heretofore been rejected, which have not been approved by Orders of the Court, and which are not specified in Paragraph 1 above of this Section V. shall be rejected by the Debtor as of the Effective Date of the Plan.

The lease was not among those specified in Paragraph 1 of Section V. of the Plan. Paragraph 13 of the Definitions section of the Plan states:

13. "EFFECTIVE DATE" shall be that date on which the order confirming the Plan becomes final and nonappealable.

Lessor was notified of the Chapter 11 proceeding by means of a telephone call on May 14, 1987 during which the Lessor was informed that the Debtor did not want the aircraft. The Lessor filed its Proof of Claim on June 25, 1987 and an Amendment To Proof of Claim on July 27, 1987 prior to the Bar Date established by the Court for administrative claims. The lease provides for a daily rental rate of Seven Hundred Eighty and 54/100's Dollars ($780.54) and the Lessor seeks to recover rent for the aircraft from April 24, 1987 until July 17, 1987, an eighty-four (84) day period at the daily rental rate for a total of Sixty-Five Thousand Five Hundred Sixty–Five and 36/100's Dollars ($65,565.36) for administrative rent.

The hearing on confirmation of the Plan was held on June 15, 1987 at which time the Court, ruling from the bench, confirmed the Plan. A representative of the Lessor obtained some of the keys to the aircraft from the Debtor on June 19, 1987. The Order Confirming Plan was entered by the Court on June 29, 1987, entered on the docket on July 7, 1987 and became final and non-appealable on July 17, 1987. The aircraft had been stored and maintained by the Debtor both pre and post petition at a hanger at the Little Rock Air Center facilities at Adams Field in Little Rock, Arkansas. The aircraft was not flown by the Debtor between April 24, 1987 and July 17, 1987. The Lessor took physical possession of the aircraft on August 21, 1987.

It has been further stipulated by the parties that Lessor's claim, if approved as an administrative claim, will not be paid in advance of other Court approved administrative claims, but will be paid pro-rata with the other approved administrative claims upon a Court approved distribution.

In view of the stipulation that any allowed administrative claim of New England will be paid pro-rata with other claims after Court approval, Computers and Worthen have withdrawn their objections. Only the debtors' objection remains.

New England bases its entitlement to an administrative claim on § 503(b)(1)(A) of the Bankruptcy Code. 11 U.S.C. § 503(b)(1)(A) provides:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

Two lines of cases have developed regarding payment of administrative expenses under lease agreements. One line holds that administrative claims for rent should be based upon the reasonable rental value of the property without regard to the debtor's actual use. The leading case supporting this view is *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982).[2]

---

**2.** Cases supporting the *Fred Sanders* view rely on *Kneeland v. American Loan & Trust Co.*, 136

In *Fred Sanders,* a Michigan bankruptcy court held that unless a debtor could show that administrative payments would be unreasonable, the reasonable value to be paid for a lessor's administrative claim for accumulated lease obligations incurred after filing through the date of rejection of a lease was to be computed at the rental amount specified in the terms of the lease, not based on the actual benefit the debtor's estate received. It did not matter that the debtor had not used any of the leased property after filing. The bankruptcy court, in stating its rationale for the decision, noted that the debtor had within its power the potential to minimize the administrative costs by taking prompt action to assume or reject executory contracts and leases, and that debtors should be required to pay the reasonable rental value until the lease was assumed or rejected. 22 B.R. at 905. The court stated that a contrary result would be inequitable and would encourage dilatory action by debtors. 22 B.R. at 906–07.

A number of courts have followed this view. *See, e.g., Mohawk Industries, Inc. v. Related Industries,* 64 B.R. 667, 669 (D.Mass.1986) (lessor's administrative claim valued without regard to debtor's actual use of property); *In re Xonics, Inc.,* 65 B.R. 69, 73 (Bankr.N.D.Ill.1986) (administrative rent claims must be based upon the reasonable rental value of the property regardless of the use made of the property); *In re Energy Resources, Ltd.,* 47 B.R. 337, 338 (Bankr.D.Mass.1985) (lessor's administrative claim measured by reasonable value, not actual use of leased property); *In re Tucci,* 47 B.R. 328, 333 (Bankr.E.D.Va. 1985) (fair rental rate is contract rental rate rather than rate determined by specific use); *and In re International Storage Corp.,* 41 B.R. 808, 809 (Bankr.E.D.Wisc. 1984) (administrative claims based on reasonable rental value of property).

The second line of cases holds that an administrative claim for rent should be based upon the debtor's actual use of the leased property. *See Broadcast Corp. of Ga. v. Broadfoot,* 54 B.R. 606 (N.D.Ga. 1985), *aff'd. sub nom., In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986).[3] *See also In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 891, 897 (Bankr.E.D.Pa.1987) (focus of 11 U.S.C. § 503(b)(1)(A) is upon *necessity* of expenses for *preservation* of the debtor's estate; followed *Broadcast Corp. of Ga.*); *In re N–Ren Corp.,* 68 B.R. 404, 406–07 (Bankr.S.D.Ohio 1986) (debtor must pay only for actual use of leased property, not what leased property would have been worth to lessor); *In re Intran Corp.,* 62 B.R. 435, 436–37 (Bankr.D.Minn.1986) (debtor must pay only for its actual use of leased property based on value to debtor for that use); *In re Dixie Fuels,* 52 B.R. 26, 27 (Bankr.N.D.Ala.1985) (claims under 11 U.S.C. § 503(b)(1)(A) are judged by actual value received by the estate); *In re Rhymes, Inc.,* 14 B.R. 807, 808 (Bankr.D. Conn.1981) (estate received no benefit from lease and administrative claim disallowed).

The *Broadfoot* case, which was affirmed by the 11th Circuit Court of Appeals, is often cited in support of the second line of cases. *Broadcast Corp. of Ga. v. Broadfoot,* 54 B.R. 606 (N.D.Ga.1985), *aff'd sub nom., In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir. 1986). In *Broadfoot,* the District Court for the Northern District of Georgia reversed a bankruptcy court's holding and allowed an administrative claim for seventeen days, the actual number of days which a lease for subscription television services was utilized by a chapter 7 trustee, rather than for an entire sixty day period which had elapsed before the lease was rejected. The district court found that "there must be an actual, concrete benefit to the estate before a claim is allowable at all," and determined that no benefit had occurred after the trustee had ceased using the subscription television services. 54 B.R. at 613. The

U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890), which held that a claim for a receiver's use of real property should be allowed "at a reasonable value irrespective of the actual use." *Id.* at 101, 10 S.Ct. at 954.

3. Cases which follow the *Broadcast* case rely on *Philadelphia Co. v. Dipple,* 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941), which held that during the period in which a trustee was deciding to assume or reject a lease, the trustee was liable for only "the amount due for use at occupation." *Id.* at 174, 61 S.Ct. at 541.

district court declined to follow the *Fred Sanders* case upon which the bankruptcy court had relied. The district court noted that the *Fred Sanders* case had found that a "debtor is *entitled* to administrative payment for the pre-rejection period at the contract rate, regardless of whether the trustee put the asset to *any* use whatsoever." 54 B.R. at 610 (emphasis original). The district court held that the trustee's mere failure to assume or reject the lease during the statutory period without receiving an actual use or benefit of the leased property did not constitute an administrative expense. 54 B.R. at 611. Mere potential of benefit was not enough; the threshold requirement was that the expense be "actual" and "necessary" which meant that the estate had to accrue a real benefit. *Id.*

The district court in *Broadfoot* took a different approach in the rationale for its holding than the *Fred Sanders* court did. The district court found it more important to minimize the costs of estate administration, to protect unsecured creditors' interests and to prevent certain unsecured creditors from gaining an advantage over other unsecured creditors than to penalize dilatory debtors. The district court distinguished *Fred Sanders* and the cases cited therein from the *Broadfoot* case on the grounds that in those cases the assets had been used and possessed by the estate for a period of time after filing, and the disputes centered around the extent and amount that should be allowed as an administrative claim, not whether an administrative claim should be paid at all. 54 B.R. at 611. Upon appeal, the Eleventh Circuit Court of Appeals affirmed the district court's opinion and adopted the rationale and analysis set forth by the district court.

*In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986).[4]

Although *Broadfoot* concerned a chapter 7 proceeding, the holding has been followed in chapter 11 proceedings as well. *See In re N–Ren Corp.,* 68 B.R. 404 (Bankr.S.D. Ohio 1986) (debtor required only to pay for actual usage of leased property as administrative expense); *In re Intran Corp.,* 62 B.R. 435 (Bankr.D.Minn.1986) (debtor made no use of leased property prior to lease rejection and payments sought were not actual, necessary costs and expenses of preserving the estate pursuant to 11 U.S.C. § 503(b)(1)(A), and administrative claim was denied.); *In re Dixie Fuels, Inc.,* 52 B.R. 26 (Bankr.N.D.Ala.1985) (same).

The Eighth Circuit Court of Appeals has not addressed the issue of payment of administrative claims arising from executory contracts and lease agreements. However, the Court does find the case law which has developed in other courts to be instructive. In this particular case, the Court is persuaded that the line of cases setting forth the *Broadfoot* analysis states the proper interpretation and application of the law.

As stipulated, the debtors filed chapter 11 bankruptcy proceedings on April 24, 1987. Plans of arrangement were confirmed on June 15, 1987. An Order confirming the plans was signed by the Court on June 29, 1987, entered on the docket on July 7, 1987 and became final and non-appealable on July 17, 1987, the effective date of the plans, under the terms of the plans. From April 24, 1987, the date of filing, through July 17, 1987, the date upon which the lease was deemed rejected under the plans, the aircraft was not used or flown by the debtors. During that time, the air-

---

**4.** Other courts have also determined that the rationale behind *Fred Sanders* which places the burden of minimizing administrative expenses on the debtor to be unacceptable. In *In re Grant Broadcasting of Philadelphia,* 71 B.R. 891 (Bankr.E.D.Penn.1987), a Pennsylvania bankruptcy court determined that it was not Congress's intent in enacting 11 U.S.C. § 503(b)(1)(A) to saddle debtors with special post-petition obligations or to give preferential treatment to selected creditors through the creation of a broad category of administrative expenses. *Grant,* 71 B.R. at 897. The *Grant* Court also agreed that minimizing administrative costs helped to preserve a debtor's scarce resources and encourage rehabilitation. *Id.* A California bankruptcy court in *In re Intran,* 62 B.R. 435 (Bankr.D.Minn.1986), found that requiring debtors to protect creditors' interests was "contrary to the whole spirit of the Bankruptcy Code which is to put the burden on creditors to protect their interests." 62 B.R. at 436. The Court noted that if a creditor decided that it was being economically disadvantaged, the creditor had remedies under the Bankruptcy Code and could seek relief from the automatic stay or adequate protection. *Id.*

craft was stored and maintained by the debtors in a hanger at an airport located in Little Rock, Arkansas. However, the debtors did not use the aircraft. From the stipulated facts, the Court cannot find that an actual, concrete benefit to the estate was received by the debtors' non-use of the aircraft which would give rise to an administrative claim by New England pursuant to 11 U.S.C. § 503(b)(1).[5]

Further, placing the burden on New England, as a creditor, to protect its interest in the aircraft prior to the rejection of the lease would not have been unreasonable. New England was notified shortly after filing on May 14, 1987 that the debtors did not want the aircraft. A representative of New England obtained the keys to the aircraft on June 19, 1987. However, New England did not take physical possession of the aircraft until August 21, 1987, three months after New England received notification that the debtors did not want the aircraft and over one month after the lease was deemed rejected. The debtors did not cause any considerable delays in returning the aircraft to New England. Throughout the bankruptcy proceeding, New England was in a position to protect its interests under applicable provisions of the Bankruptcy Code.

Because no benefit was conferred on the debtors' estates by the debtors' non-use of the aircraft, New England's administrative claim in the amount of $65,565.36 will be denied. New England will be entitled to a claim as provided in the applicable Bankruptcy Code provisions.

■ In cases where an administrative claim has been denied because the debtor's estate received no benefit from the property, the Courts have looked to 11 U.S.C. §§ 365(g)(1) and 502(g) to determine that a claim arising under a rejected lease is a pre-petition claim. *See In re Intran Corp.,* 62 B.R. 435 (Bankr.D.Minn.1986). 11 U.S. C. § 365(g)(1) provides:

Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12 or 13 of this title, immediately before the date of the filing of the petition. . . .

11 U.S.C. § 365(g)(1). 11 U.S.C. § 502(g) provides:

A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12 or 13 of this title, or an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under section (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(g). From these two provisions, a lease rejection gives rise to a non-administrative pre-petition claim when the lease is never assumed. In this particular case, New England will be entitled to assert a pre-petition claim pursuant to these sections.

An Order consistent with this Memorandum Opinion will be entered of even date.

---

5. In fact, because the debtor remained responsible for storage and maintenance of the aircraft, some expenses after filing may have already resulted in expenses for the debtors.