**In re Roger McEwen MOORE, Debtor.**

**No. 3–83–01378.**

United States Bankruptcy Court, E.D. Tennessee.

July 25, 1989.

---

**4.** 100 B.R. at 365–66.

See also, Bkrtcy., 50 B.R. 661.

Frantz, McConnell & Seymour, Robert M. Bailey, Knoxville, Tenn., for Cobbly Nob Property Owners Ass'n, Inc.

Miller & Martin, Lawrence R. Ahern, III, Shelley D. Rucker, Chattanooga, Tenn., for trustee.

## MEMORANDUM ON COBBLY NOB PROPERTY OWNERS ASSOCIATION, INC.'S APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSE

RICHARD S. STAIR, Jr., Bankruptcy Judge.

This matter is before the court on an "Application For Payment Of Administrative Expense" (Application) filed March 9, 1989, by Cobbly Nob Property Owners Association, Inc. (Association). By its Application, the Association seeks to recover the sum of $9,986.80 as an administrative expense under 11 U.S.C.A. § 503(b)(1)(A) (West Supp.1989). The trustee, Lawrence R. Ahern, III, filed his response in opposition to the Application on March 16, 1989. A hearing was held April 13, 1989, and all issues have been fully briefed.

The debtor, Roger McEwen Moore, filed a petition under Chapter 11 on July 6, 1983. On July 26, 1984, the debtor's Chapter 11 case was converted to a case under Chapter 7.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2) (West Supp.1989).

### I

In its Application, the Association asserts that it is a secured creditor whose claim is secured by a lien on ten (10) unimproved lots (the lots) [1] owned by the debtor located in the Cobbly Nob Subdivision in Sevier

---

1. It is undisputed that upon commencement of the debtor's bankruptcy case, the lots became property of the estate. 11 U.S.C.A. § 541 (West 1979 and Supp. 1989).

County, Tennessee.[2] It asserts that the lots are encumbered by affirmative covenants in favor of the Association for the payment of maintenance fees assessed annually by the Association.[3]

The "Declaration of Restrictions Village of Cobbly Nob," which governs the obligations of the Association and owners of lots in the subdivision, including the debtor, was recorded in the office of the Register of Deeds for Sevier County on April 28, 1971. This instrument provides in material part:

> (25) It is agreed that ... [the] Association ... shall establish reasonable annual assessment charges for road maintenance, maintenance of the trails and recreational areas and garbage and trash collection services[.]

> (26) All covenants, restrictions and affirmative obligations ... shall run with the land and shall be binding on all parties and persons claiming under them....

It is undisputed that the assessment provisions quoted above were in place during the administration of the debtor's estate. Robert J. Fast, a director of the Association and its treasurer, testified that the annual assessments provide funds necessary to maintain the subdivision's roads, trails, and recreational areas as well as garbage, trash collection, and security services. Mr. Fast further testified that the monies generated from the assessments provide amenities for the subdivision property owners which, in his opinion, enhance the value of their properties.

On May 3, 1988, the trustee filed a "Notice To Creditors And Interested Parties Of Intent To Abandon Debtor's Property Located In Cobbly Nob Subdivision." The trustee premised his abandonment of the

lots on a lack of equity attributable to tax liens and Association dues and fees.[4] No evidence was introduced establishing that the trustee utilized the lots for any purpose prior to their abandonment.[5]

The Association asserts that it has not been paid the $9,986.60 in fees it assessed against the lots prior to their abandonment by the trustee. It contends it rendered services which were reasonable and necessary to preserve the lots while they were property of the estate and that its claim is thus entitled to allowance under § 503(b)(1)(A) as an administrative expense. The trustee admits that the Association is a secured creditor and that it was not paid the fees assessed against the lots prior to their abandonment. He denies, however, that the services rendered by the Association were "necessary costs and expenses of preserving [the lots]" as that term is construed under Code § 503(b)(1)(A). The trustee further argues that the Association, having failed to seek the lifting of the automatic stay since 1983 when the debtor commenced his bankruptcy case, sat upon its rights and should not now be able to seek reimbursement from the estate for fees and penalties. The trustee also argues that the Association would have continued to provide the services even had the trustee requested that the Association cease providing its services. In support of his argument, the trustee notes that the Association was obligated by contract to provide its services to all of the property owners in the subdivision.

II

Bankruptcy Code § 503 provides in material part:

---

**2.** At the hearing counsel indicated that the value of the lots was exceeded by the tax liens and the Association's liens.

**3.** The Association's membership consists of each property owner in the Cobbly Nob Subdivision.

**4.** Mr. Fast testified that the lots were encumbered by tax liens in the amount of $5,705.13 for the 1981–1987 tax years. Neither party introduced evidence establishing the value of the

lots. For reasons discussed *infra* such omission will not affect the court's determination of the Application.

**5.** The May 3, 1988 notice of the trustee's intention to abandon the lots was self-executing in that it provided for abandonment unless objections were filed on or before May 20, 1988. No objections were filed.

(b) After notice and a hearing, there shall be allowed, administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]

11 U.S.C.A. § 503 (West 1979 and Supp. 1989).

 The court has broad discretion to determine whether a claim for an administrative expense is, in actuality, an administrative expense. *In re Dakota Industries,* 31 B.R. 23, 26 (Bankr.D.S.D.1983). Bankruptcy courts should strictly scrutinize claims and narrowly construe the terms "actual" and "necessary." *Grantham v. Eastern Marine, Inc.,* 93 B.R. 752, 754 (Bankr.N.D.Fla.1988); *In re Sinclair,* 92 B.R. 787, 788 (Bankr.S.D.Ill.1988); *In the Matter of Patch Graphics,* 58 B.R. 743, 745 (Bankr.W.D.Wis.1986). The burden of proof to demonstrate that the claim is an administrative claim is upon the movant. *In re Sinclair,* 92 B.R. at 788; *Patch Graphics,* 58 B.R. at 745. The movant must also show "that the expenses were reasonable, necessary and benefited the estate." *In re Hendersonville Bowling Center, Inc.,* 65 B.R. 963, 965 (Bankr.M.D. Tenn.1986). The *Patch Graphics* court stated that "the expense in question must be shown to have been 'actual and necessary.'" 58 B.R. at 745.

Courts have not spoken with unanimity when determining whether or not to allow a claim for an administrative expense under § 503(b)(1)(A). As hereafter discussed, one approach looks not to any actual benefit received by the estate, but to the estate's ownership or possession of the property. A different approach allows an administrative expense claim once the creditor demonstrates that a benefit has accrued to the estate. A third approach, consistent with the second, denies the creditor's claim when the services or expenses provided have not benefited the estate. Finally, no administrative expense claim is allowable where the movant incurs the expense substantially in its own self-interest.

### A. Administrative Expense Premised Upon Debtor's (Trustee's) Possession Of The Property

The first approach holds that where the debtor or trustee holds property, e.g., leased property, during the pendency of the bankruptcy case, the monies due the creditor should be allowed as an administrative expense. In such cases, the amount of the claim is determined not by the actual use of the property but by its reasonable value. *In the Matter of Fred Sanders Co.,* 22 B.R. 902 (Bankr.E.D.Mich.1982). The vitality of the approach espoused by the *Fred Sanders* court in this circuit has been cast in some doubt in view of the Sixth Circuit's recent decision in *United Trucking Service, Inc. v. Trailer Rental Co., Inc. (In re United Trucking),* 851 F.2d 159 (6th Cir. 1988), discussed *infra.*

In *Sanders,* the debtor leased three vans which were in its possession at the time it filed its petition for relief under Chapter 11. The debtor decided not to assume the lease. The lessor applied for allowance of the lease payments which came due from the date the case was commenced to the date the lease was rejected. The debtor argued that it did not use the vans prior to rejection of the lease and that the lease and vans did not benefit the estate. The court nonetheless determined that the contractual amount due under the terms of the lease during the period the debtor retained possession of the vans was an administrative expense.[6] Though the court recognized the need to minimize expenses of administration, it felt that disallowance of the claim would unfairly prejudice the lessor. *Id.* at 906.

### B. Administrative Expense Premised Upon Benefit To Debtor

A second approach is exemplified by *United Trucking Service, Inc. v. Trailer*

---

**6.** The *Sanders* court determined that "[i]n the absence of convincing evidence to the contrary, the payment fixed by the lease is presumptively reasonable." 22 B.R. at 907 (citing, inter alia, *Green v. Finnigan Realty Co.,* 70 F.2d 465 (5th Cir.1934)). This approach is not followed by the Sixth Circuit. *In re United Trucking,* 851 F.2d at 162.

Rental Co., Inc. (In re United Trucking, Inc.), 851 F.2d 159 (6th Cir.1988). In re United Trucking, like many of the cases cited in this Memorandum, concerns administrative expenses in the context of a lease. Though the present matter does not concern a lease, the principles contained within lease cases are applicable. The Sixth Circuit considered a claim under § 503(b)(1)(A) similar to that before this court—whether damages from a postpetition breach of a prepetition lease agreement by the debtor should be accorded priority as an administrative expense.

In In re United Trucking, the debtor leased trailers from Great Dane Trailers and agreed to maintain and repair the trailers at the debtor's expense. During the pendency of the lease, the debtor filed a petition under Chapter 11. The debtor continued to use the trailers after the petition was filed. Following the return of the trailers, the lessor filed an application seeking payment as an administrative expense for the cost of repairing 53 trailers, replacing tires, and for a casualty loss associated with the value of a stolen trailer. The administrative expense claim arose from the debtor's alleged improper postpetition use of the trailers under its prepetition contract.

The court observed that the appropriate inquiry should relate to the benefit received by the trustee or debtor-in-possession:

> American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., 280 F.2d 119 (2d Cir.1960), we believe, articulated the appropriate rationale in a case of this kind:
>
> > The right to priority in the event the trustee or debtor in possession receives benefits under the [executory] contract during the interval between the filing of the debtor's petition and the rejection of the contract "is an equitable right based upon the reasonable value"

of the benefits conferred, rather than upon the contract price.

> . . . .
>
> . . . [T]he purpose of according priority in these cases is fulfillment of the equitable principle of preventing unjust enrichment of the debtor's estate rather than the compensation of the creditor for the loss to him.

Id. at 124, 126. Thus, administrative expenses under § 503 . . . if allowable, should reflect actual value conferred on the bankrupt estate by reason of wrongful acts or breach of agreement. In re Dixie Fuels, Inc., 52 B.R. 26, 27 (Bankr. N.D.Ala.1985).

In re United Trucking, 851 F.2d at 162. The court determined that a benefit did flow to the estate:

> United's asserted failure to maintain and repair the trailers in accord with the lease obligation allowed . . . the debtor[ ] to use the money saved and not paid for TRC's benefit . . . to continue its operations. This breach and misuse of TRC's trailers did benefit the bankrupt estate.

Id. at 162.[7]

In Dayton Hydraulic Co. v. Felsenthall, 116 F. 961 (6th Cir.1902), the lessor requested the receiver in bankruptcy to adopt or decline the lease of a mill. The receiver did nothing for a few years; he did not expressly adopt the lease; he did not make lease payments; nor did he operate the mill. The court determined that the receiver's continued retention of the lease which kept the mill closed for a few years, had benefited other property of the estate, specifically the estate's other mills by lessening the amount of competition the other mills faced. The lessor's request for rental payments was granted.

## C. Administrative Expense Premised Upon Lack Of Benefit To Estate

A third approach reasons that if retained property has not benefited the estate, the

---

7. In In re Lenz, 90 B.R. 458 (Bankr.D.Colo. 1988), the court held that a Chapter 11 estate was liable for the postpetition subdivision homeowners' assessments against the debtor's personal residence. In re Lenz is distinguish-

able from the instant proceeding as the debtors lived at their residence in the subdivision and clearly derived a direct benefit from services provided by the homeowners association.

creditor's claim is not allowable as an administrative expense under § 503(b)(1)(A).

In *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2nd Cir.1960), followed by the Sixth Circuit in *In re United Trucking, supra,* the debtor entered into a contract to charter two cargo vessels, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, and then allowed the vessels to sit idle at dockside. The creditors sought an order allowing their contract payments arising after the debtor filed its petition in bankruptcy as entitled to a priority under § 64(a) of the Bankruptcy Act (11 U.S.C.A. § 104(a)), repealed effective October 1, 1979, Pub.L. No. 95–598, Title IV, §§ 401(e), 402(a), Nov. 6, 1978, 92 Stat. 2682.[8] The court noted:

> The right to priority ... "is an equitable right based upon the reasonable value" of the benefits conferred.... Where no benefits are received by the bankrupt estate ... and the contract is not assumed, the creditor's claim is not entitled to priority.

*American A. & B.*, 280 F.2d at 124 (citations omitted).

The *American A. & B.* court found that "the only benefit conferred upon the debtor in possession ... was the value of the option either to accept or reject the charter[ ]" and that this benefit arose not from the charter contract with the claimants but under applicable law. *Id.* at 126; *see also In re Rhymes*, 14 B.R. 807 (Bankr.D.Conn. 1981). Therefore, the Second Circuit rejected the creditors' claims for priority payment.

In *In re Pickens–Bond Construction Co.*, 83 B.R. 581 (Bankr.E.D.Ark.1988), the court denied a creditor's request for payment of an administrative expense arising from the lease of an aircraft. The court, in rejecting the argument that possession of the aircraft by the debtors was sufficient to give rise to an allowable administrative claim, stated:

> [T]he debtors did not use the aircraft. From the stipulated facts, the Court cannot find that an actual, concrete benefit to the estate was received by the debtors' non-use of the aircraft which would give rise to an administrative claim by New England pursuant to 11 U.S.C. § 503(b)(1).

*In re Pickens–Bond*, 83 B.R. at 586 (footnote omitted).

In *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891 (Bankr.E.D.Pa. 1987), the debtors, a number of television stations, had contracted for television programming with various program suppliers. The suppliers sought an administrative expense payment encompassing all programming included in the contract. The debtors argued that they should not be compelled to pay for programming not played by the debtor television stations. The court noted that § 503(b)(1)(A) speaks to "the *necessity* of the expenses to *preservation* of the debtor's estate...." *Id.* at 897 (emphasis in original). The estate was not preserved by unaired programming. Therefore, the suppliers' claims for payment of administrative expenses were denied as to programming not actually aired. *See also In re Yost*, 54 B.R. 818, 821 (Bankr. W.D.Ky. 1985) (Claim for administrative expense under § 503(b)(1)(A) denied where it was "undisputed ... that the debtors' estate received no benefit from the leased equipment between the filing of the Chapter 11 petition and the formal rejection of the lease.").

In *In re Rhymes, Inc.*, 14 B.R. 807 (Bankr.D.Conn.1981), the lessor's claim for an administrative expense was denied as the debtor vacated the leasehold premises without even having operated its business on those premises. The estate derived no benefit from the lease.

### D. Administrative Expense Where Creditor Acts In Self Interest

Finally, a fourth approach considers the acts of the creditor. If the creditor provid-

---

**8.** Bankruptcy Act § 64 provided in material part:

> (a) The debts to have priority ... shall be
> (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition....

11 U.S.C.A. § 104(a) (West 1953 & Supp.1979).

ed the services out of self-interest, the expense is not an allowable administrative expense. In *In the Matter of Hayes*, 20 B.R. 469 (Bankr.W.D.Wis.1982), the claimant fed and cared for the debtor's herd of cows. His request that his expenses be treated as an administrative expense entitled to a priority was denied. The court reasoned that in feeding and caring for the cows, the claimant "was acting substantially in his own interest." *Id.* at 473. *See also In re The Charter Co.*, 52 B.R. 267 (Bankr.M.D.Fla.1985) (Broker's commission for sale entered into postpetition denied an administrative priority as claimant's activities were designed to further its own interest and not intended to benefit the bankruptcy estate.); *Hassett v. Revlon, Inc. (In re O.P.M. Leasing Services, Inc.)*, 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982) ("Where a creditor incurs expenses primarily in its own interest, this creditor is not entitled to a priority administrative claim."); *Patch Graphics*, 58 B.R. at 745 ("[E]xpense must not have been incurred primarily in the interest of the claimant...").

### III

■ Applying the approach followed by the bankruptcy court in *In re Fred Sanders*, that the Association's assessments and penalties be allowed as an administrative claim simply because the estate owned the lots, would be inappropriate in the instant proceeding. The Association's claim is secured and it will in theory recover the amount of its assessments upon foreclosure of its liens. Further, this court has considerable difficulty in applying the *Sanders* rationale in a Chapter 7 case where the estate is in a liquidation mode rather than in a Chapter 11 income producing posture and where the property at issue was owned but not occupied or used by the debtor or trustee.

*Sanders* has been criticized by several courts. Initially, it ignores the question of whether the debtor received any benefit. As one court stated:

"[T]he *Sanders* Rule is contrary to the relevant statutory description of administrative expenses," which emphasizes that

such expenses are only allowable for costs which are "actual" and "necessary" to the estate.

*In re Grant Broadcasting*, 71 B.R. at 896, quoting *Broadcast Corp. of Georgia v. Broadfoot*, 54 B.R. 606, 611 (U.S.D.C.N.D. Ga.1985), aff'd sub nom., *Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta)*, 789 F.2d 1530 (11th Cir.1986). In addition, the *Sanders* rule does not require a showing that the estate has actually and necessarily benefited from the claimant's service. Section 503(b)(1)(A) mandates such a showing.

■ Actual value or benefit to the estate and not a "reasonable value" should be the appropriate measure of compensation. Otherwise, the claimant may receive a windfall at the expense of other creditors to the detriment of the estate. The *Sanders* rule has the effect of "saddl[ing] debtors with special post-petition obligations," contrary to Congressional intent. *Grant Broadcasting*, 71 B.R. at 897.

Finally, application of the *Sanders* approach tends to deplete estate assets rather than minimize administrative costs in order to provide a greater return to creditors. *Broadcast Corp.*, 54 B.R. 606; *see generally, In re Pickens–Bond Construction Co.*, 83 B.R. 581 (Bankr.E.D.Ark.1988); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891 (Bankr.E.D.Penn.1987). In the present context, Chapter 7 liquidation, minimizing administrative expenses to maximize the return to creditors is a compelling and important goal.

The second approach, followed by the Sixth Circuit in *In re United Trucking*, is also inappropriate to apply in the instant proceeding. In *In re United Trucking*, allowance of an administrative expense was proper because benefit, in the nature of continued use of the lessor's trailers, ran from the lessor to the estate. In the case sub judice, no equivalent benefit to the estate was demonstrated by the Association. The Association asserts that benefit flowed to the estate from the services it provided in that the services enhanced the value of the lots. However, the Association has not demonstrated that the fees it

assessed the debtor attributable to his ownership of the lots were in any way utilized to preserve the value of and benefit the debtor's property. *See In re Mishkin*, 85 B.R. 18 (Bankr.S.D.N.Y.1988). In fact, the contrary is true as it appears that the Association's annual assessments caused the lots to be encumbered in excess of their value. Clearly, there is nothing in the record establishing that the value of the lots was preserved or enhanced by any services performed by the Association.

The third approach is logically consonant with *In re United Trucking*. Rather than allow an administrative expense claim where the claimant shows a benefit to the estate, this approach disallows such a claim where no benefit to the estate is established by the movant. This approach is appropriate to apply here. As discussed, *supra*, no evidence was introduced demonstrating that any benefit (e.g., increased resale or rental value of the lots) flowed to the estate from the services provided by the Association. *American A. & B.*, 280 F.2d at 124; *In re Pickens*, 83 B.R. at 586. No evidence was introduced demonstrating that the trustee utilized the lots for any purpose. Further, the option to abandon the property is not a benefit but a right granted under the Bankruptcy Code. *Broadcast Corp.*, 54 B.R. at 612; *In re Rhymes*, 14 B.R. at 809; *see generally, American A. & B.*, 280 F.2d 119.

In effect, the Association has failed to demonstrate that its services benefited the debtor's estate. For this reason alone, the Association's Application cannot be granted.

As to the fourth approach discussed above, it is apparent from the testimony and the "Declaration of Restrictions Village of Cobbly Nob," introduced into evidence at the hearing, that the Association provided its services as a consequence of its contractual obligations with all of the property owners in the subdivision and not merely because of its contract with the debtor. Although the Association provided services to the debtor's lots, its primary motive was to honor the contracts entered into with all of the property owners. This is a second reason why the Application will be denied. *See*, e.g., *Matter of Hayes*, 20 B.R. at 473.

## IV

For the reasons discussed herein, the Association's Application shall be denied. This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate order will be entered.