**In re RHYMES, INC., f/d/b/a Rhymes, A Record Shop, Debtor.**

**Bankruptcy No. 5–80–00321.**

United States Bankruptcy Court, D. Connecticut.

Oct. 26, 1981.

Herman S. Hodes, New Haven, Conn., Trustee.

Robert B. Shapiro, Cohn & Birnbaum, P. C., Hartford, Conn., for Carlyle Real Estate Limited Partnership-72.

Richard M. Coan, Belford, Belford & Coan, New Haven, Conn., for objecting officers and directors of debtor.

MEMORANDUM AND ORDER ON TRUSTEE'S APPLICATION FOR DETERMINATION OF ADMINISTRATIVE RENT CLAIM

ALAN H. W. SHIFF, Bankruptcy Judge.

Background

The debtor in this Chapter 7 case, converted from Chapter 11 on November 17,

1980 (after the period in question, as stated below) entered into a lease with Carlyle Real Estate Limited Partnership –72– (Carlyle) for the rental of 24,000 square feet of commercial space in the Corbin's Corner Shopping Parkade, West Hartford, Connecticut. The rental charge was $2,437.15 per month, including a proportional share of common area maintenance charges and real estate taxes. The lease was executed on April 18, 1980 with a two month grace period for the first rental payment. The claimed administrative rent expense was incurred during the period from June 18 through August 30, 1980.

The debtor's Chapter 11 petition was filed in this court on May 23, 1980, and Carlyle received notice thereof on May 27, 1980. On June 1, 1980, the debtor removed all of its trade fixtures and other items of personal property from the premises. On June 2, 1980, Carlyle's maintenance man observed the empty store and reported that condition to Carlyle. On August 22, 1980, the debtor's attorney advised Carlyle's attorney that the debtor abandoned the lease and that Carlyle was "free to lease the premises at any time."

Carlyle claims that since the lease had not been rejected, it was still in effect during the period in question and that during that period, the leasehold interest was of value to the estate because the debtor might have decided to reoccupy the premises as part of its plan of reorganization. Carlyle further argues that since it could not use, lease, or occupy the premises because of the automatic stay,[1] it should be allowed administrative expense status for its rent claim.

An objection to Carlyle's claim has been asserted by certain officers and directors of the debtor and by the Chapter 7 trustee, who, as stated above was appointed after the November 17, 1980 conversion. The basis for the objection is that the leased premises were vacated on June 1, 1980 and any rent due during the period in question was not an expense which was necessary for the preservation of the estate as provided by section 503(b)(1)(A).[2]

### Discussion and Conclusion

The question presented by this claim is whether rent for the post petition period in question was necessary for the preservation of this Chapter 11 estate and thus eligible for administrative expense status under section 503(b)(1)(A). I conclude that it was not.

■ Claims for an allowance of administrative expense under this subsection of the Code are judged by the actual value received by the estate. An administrative expense only qualifies to the extent that it was necessary for the preservation of the estate. Thus, a claim for an administrative expense which merely has potential for value upon the happening of other events may not be allowed.

■ With respect to unexpired leases, it is well settled that until assumption or rejection of the debtor's lease, the estate is liable only for the reasonable value of the use and occupancy of the property. *In re United Cigar Stores Co.*, 69 F.2d 513 (2d Cir.), *cert. denied sub nom. Reisenwebers, Inc. v. Irving Trust Co.*, 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934); *In re Standard Furniture Co.*, 3 B.R. 527, 6 B.C.D. 270 (Bkrtcy.S.D.Cal.1980); 2 *Collier on Bankruptcy* Par. 365.03[2] (15th ed. 1979); See 3 *Collier on Bankruptcy* Par. 503.04[1][a] (15th ed. 1979). The liability for actual use and occupancy is based on "the equitable principle of preventing unjust enrichment, rather than the compensation of the creditor for loss to him." *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 126 (2d Cir. 1960).

---

1. 11 U.S.C. Sec. 362(a).

2. 11 U.S.C. Sec. 503.
    (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title including—
    (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

In this case, a review of the facts indicates that although the lease was still in effect, the estate received no value from the rental of the space during the period in question. The debtor never operated its business in the premises, and, having removed all of its fixtures and personal property two weeks before the first rent payment was due, never returned to the premises after June 1, 1980. In short, there was no evidence that the estate derived any benefit whatsoever from the lease.

Carlyle contends, however, that the debtor wanted the lease in the event it decided to occupy the space in the future. In other words, the estate received a valuable right to assume the lease during the period in question. This argument was rejected by the Second Circuit in *American A & B Coal Corp., supra,* 280 F.2d at 126.[3] Moreover, the right to decide, over a reasonable period of time, whether to assume or reject an unexpired lease is a right granted to the debtor-in-possession or trustee by the Reform Act not sold by the lessor. *See* Section 365(a), (d)(2).[4] Acceptance of Carlyle's reasoning would diminish this right by charging administrative expense until the debtor-in-possession rejected the lease.

Since the estate received no benefit from the lease during the time in question, Carlyle's administrative claim must be disallowed notwithstanding any loss that Carlyle suffered. If Carlyle believed that the debtor was taking too long to decide whether to assume or reject, it could have pursued the remedy provided by 11 U.S.C. 365(d)(2).

**3.** In *American A & B Coal Corp.,* the debtor chartered two vessels which stood empty at loading ports until, pursuant to a stipulation between the ship owners and the debtor-in-possession, the vessels were released for charter to other parties. In affirming the denial of an administrative claim, the court noted:

> Here the only benefit conferred upon the debtor-in-possession by the presence of the appellants' ships for the period between the filing of the petition and the rejection was the value of the option either to accept or reject the charter. The same sort of benefit would be realized in the case of a lease of real property not occupied by the debtor; yet in exactly such a situation we denied any priority, *In re United Cigar Store Co.,* 69 F.2d 513, *cert. denied sub nom. Reisenwebers, Inc. v.*

*Irving Trust Co.,* 293 U.S. 566 [55 S.Ct. 76, 79 L.Ed. 665] (1934).
*American A. & B. Coal Corp., supra* at 126.

**4.** 11 U.S.C. Sec. 365

(a) . . . the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(d)(2) In a case under Chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

"Debtor-in-possession" may be read where "trustee" appears. See 11 U.S.C. § 1107(a).