**In re Kenneth VYVYAN, d/b/a Kenneth Vyvyan Farms, Debtor.**

**Bankruptcy No. 85–00797.**

United States Bankruptcy Court,
E.D. Wisconsin.

Dec. 30, 1985.

Michael F. Dubis, Waterford, Wis., Trustee.

Karen Lee Park, Minneapolis, Minn., for John Deere.

DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

John Deere Company has filed a claim in this chapter 7 case in the amount of

$5,054.38 for "The deficiency arising from the resale of leased equipment upon rejection of lease by Trustee," and asserts that $2,040 of its claim should be given priority treatment as an administrative expense under § 503(b) of the Bankruptcy Code. The trustee denies that any portion of John Deere's claim is entitled to an administrative priority. The facts are not in dispute.

Kenneth Vyvyan filed a chapter 7 petition on March 12, 1985. In his statement of affairs, he indicated he was in the business of "cash crop farming" and to the question of whether he was holding property of another, he answered, "Yes, debtor leases field cultivator from John Deere Leasing Co., John Deere Road, Moline, IL, approximate value $7,500 in storage; . . . ." He had leased the cultivator from John Deere for a period of five years beginning May 2, 1983 and was in default on the lease payments at the·time he filed his petition. The trustee was appointed on March 12, 1985, qualified by filing his acceptance on March 18, 1985 [B.R. 2010(b)], and took immediate steps to liquidate the assets in the estate.

A week after conferring with the trustee by phone, the attorney for John Deere wrote him a letter on May 17, 1985 and said in part,

"While we would prefer that you assume the unexpired John Deere Lease, we know through experience that you will likely reject it. Rather than wait for the 60-day period to run, we request that you immediately reject the Lease and permit us to recover the leased equipment."

The trustee responded by noting at the foot of the letter, "I hereby reject the lease," and returning the letter to John Deere's attorney.

At the time of this exchange, the field cultivator had in fact already been repossessed on April 24, 1985, apparently by the John Deere dealer in Moline, Illinois, presumably after talking to the debtor. The trustee did not receive a written communication from the dealer and did not recall receiving any phone calls from the dealer, and like the attorney for John Deere, did not know that the cultivator had already been repossessed.

In support of its claim for administrative priority, John Deere contends that the equipment in question lies idle for most of the year, that it is only used during the spring cultivating period from April 1 to May 15, that the trustee had the use of it from March 12, 1985 to April 24, 1985, and that the reasonable rental value of the cultivator for the period from March 12, 1985 to April 24, 1985 was $2,040. As John Deere was deprived of its use during this critical time, it is entitled to be paid reasonable rent, whether or not it was used by anyone.

The trustee's position is that he had no use for the cultivator, did not use it at any time and has received no benefit from it, if it was used. According to statements made to him by the debtor, the debtor did not use it either. Since he and the debtor neither asked to use nor in fact made any use whatsoever of the cultivator after the petition was filed, the trustee contends that the claim for administrative priority should accordingly be disallowed.

John Deere has cited a number of cases involving leases of real or personal property in which courts have held that the lessor is entitled to an administrative claim where the debtor retained possession of the property for a period of time after the filing of the petition. *In re Strause*, 40 B.R. 110 (Bankr.W.D.WI.1984); *In re International Storage Corp.*, 41 B.R. 808 (Bankr.E.D.WI. 1984); *In re Peninsula Gunite, Inc.*, 24 B.R. 593 (BAP 9th Cir.1982); *In re F & T Contractors, Inc.*, 17 B.R. 966 (Bankr.E.D. MI.1982); *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.MI.1982).

All of these cases involve reorganizations under chapter 11 of the Code or its predecessor, chapter XI of the old Bankruptcy Act, wherein the debtor continued on in the ordinary course of business after the commencement of the case and purposely retained possession of the leased property. In each of these cases the debtor had continued to make use of the property in one

way or another after the case was filed, and it was not disputed that the lessor was entitled to a claim with administrative priority. What the court was asked to decide in each of these cases was the *amount* of such claim.[1]

It is a chapter 7 trustee's duty to liquidate the assets and reduce them to money [§ 704(1)], and a lease can be a valuable asset. The trustee in this case had a number of options with respect to the lease. Not surprisingly, he did not elect to continue the farming operation and use the cultivator to put in a crop for the coming year.[2] Alternatively, with court approval, he could have assumed and assigned the lease, which had over three years to run. Finally, the lease had an option to purchase which the trustee could have exercised.

It is obvious that the trustee dismissed all of these possibilities out of hand. In light of the present farm crisis and the continuing depression in the farm machinery and equipment industry, it would be unreasonable for John Deere to believe that the trustee had any interest in the cultivator. The trustee gave an immediate and negative response when he was asked about it by John Deere's attorney. John Deere's dealer picked up the cultivator without even bothering to ask.

If the trustee had used the cultivator, John Deere would clearly have an administrative expense claim. If John Deere had asked for the cultivator back and the trustee had refused such request and held the cultivator in an effort to obtain some benefit for the estate, *Fred Sanders* and the cases which follow it hold that John Deere would have an administrative claim. In its simplest terms, the question to be answered in this chapter 7 case is whether John Deere is entitled to an administrative claim where the trustee had no use for the cultivator, would have said so if asked, was not asked, and did not volunteer the information. Put another way, who had the obligation to initiate contact—John Deere or the trustee? It is inherent in John Deere's position that the trustee should be charged with this obligation. The court, however, does not agree. As a matter of fact, during the first six days of the period in question, the trustee was not even qualified to act.[3] Thereafter, in the language of *American A. & B. Coal Corp.*, 280 F.2d at 126, the trustee was "surrounded with all the problems incident to the early days of a bankruptcy proceeding...." He was busily administering those assets in this estate which would actually benefit the creditors.

Section 503(b)(1)(A) confers administrative status on "the actual, necessary costs and expenses of preserving the estate," and § 507(a)(1) grants a first priority to claims for such costs and expenses. In considering the latter section in the recent case of *In re Chicago, Rock Island & Pacific RR Co.*, 756 F.2d 517 (7th Cir.1985), the court quoted approving from *Collier on Bankruptcy,*

> "Administrative expenses consist of all the expenses incurred after the order for relief that are necessary to administer the estate and, if the debtor is reorganizing or is not immediately liquidating, to conduct the business of the debtor after the order for relief." 3 *Collier on Bankruptcy* ¶ 507.04[1][a], at p. 507–24 (15th ed. 1984).

---

1. In line with *American A. & B. Coal Corp. v. Leonard Arrivabene S.A.*, 280 F.2d 119 (2d Cir. 1960), the *Peninsula Gunite* and *Strause* cases held that the lessor was entitled to an administrative claim for the reasonable value of the debtor's use and occupancy of the property, to the extent such use and occupancy benefited the estate. *F. & T. Contractors* also speaks in terms of "use and occupancy," and see *In re Airlift International Inc.*, 761 F.2d 1503 (11th Cir.1985). In the *Fred Sanders* case, the court rejected the argument that the amount of the lessor's claim was to be determined by the use the debtor made of the property, and held instead that it

was the reasonable rental value of the property which determined the amount of the claim. In *International Storage*, the court agreed with the decision in *Fred Sanders*.

2. With the court's approval, a trustee in a chapter 7 case may be authorized to operate the business of the debtor § 704(8) of the Code.

3. It took six days in the mails for the trustee to receive his appointment from the clerk's office and to return his acceptance for filing.

In this case, it is clear that the cultivator, which had been leased to the debtor prior to bankruptcy, was not needed by the trustee to administer or preserve the estate. He made no use of it and received no benefit from it. The fact that it remained on the farm premises temporarily until picked up by John Deere's dealer conferred no benefit of any kind to the estate. Since John Deere's claim is not for an "actual, necessary [cost or expense] of preserving the estate," it is not entitled to priority status as an administrative expense.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.