**In re B–K OF KANSAS, INC., Burger King Franchise Corporation, Debtor.**

Bankruptcy No. 85–20110.
Civ. A. Nos. 88–2064, 88–2086.

United States District Court,
D. Kansas.

April 12, 1989.

Scott Allen Orth, Hall & O'Brien, PA, Miami, Fla., Justice B. King, Fisher, Patter-

son, Sayler & Smith, Topeka, Kan., for Burger King Corp.

Dan E. Turner, Topeka, Kan., Mark Klein, Kansas City, Mo., for B–K of Kansas, Inc.

James S. Willard, Topeka, Kan., trustee of B–K of Kansas, Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on consolidated appeals from the United States Bankruptcy Court's January 29, 1988, Memorandum and Order, in which Chief Judge Benjamin E. Franklin allowed Burger King Corporation an administrative expense of $12,645.49, 82 B.R. 135. Burger King Corporation appeals, claiming that the court's award was arbitrary because the court failed to award administrative expenses in accordance with the parties' franchise contract. The trustee also appeals, claiming that Burger King Corporation was not entitled to an administrative expense priority because the advertising and royalty expenses were not necessary to preserve the estate.

The standard of review for a bankruptcy appeal is found in Bankruptcy Rule 8013, which provides in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." The clearly erroneous standard does not apply, however, to the bankruptcy court's conclusions of law. Instead, legal determinations of the bankruptcy court are reviewed *de novo*. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986). For the reasons discussed below, the court has determined that the bankruptcy court's legal determinations were correct; therefore, both appeals will be denied.

The Bankruptcy Code provides an administrative expense priority in section 503(b)(1)(A):

(b) After notice and a hearing, there shall be allowed administrative expenses ..., including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

11 U.S.C. § 503(b)(1)(A). The words "actual" and "necessary" limit the scope of these expenses, and "[t]hese modifiers must be narrowly construed ... in order to keep fees and administrative expenses at a minimum so as to preserve the estate for the benefit of all of its creditors." *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982) (citing 3 *Collier on Bankruptcy* ¶ 503.04 (15th ed. 1982)). In exercising its broad discretion in determining whether a claim is entitled to administrative expense priority, *In re Dakota Industries*, 31 B.R. 23, 26 (Bankr.D.S.D. 1983) (citing *Lerner Stores Corp. v. Electric Maid Bake Shops*, 24 F.2d 780 (5th Cir.1928)), a court analyzes "the impact of these expenses to insure that the expenses did in fact confer actual value on the estate as a whole." *O.P.M. Leasing*, 23 B.R. at 121.

The bankruptcy court awarded Burger King Corporation $12,645.49 in administrative expenses for the bankrupt estate's use of the Burger King trademark. The allowed expenses represented 1% of gross sales for advertising and 1% of gross sales for royalties. Burger King Corporation claims that it should have been awarded administrative expenses at the rates provided in the franchise contract: 4% of gross sales for advertising and 2.9% of gross sales for royalties at the Whitelakes store, and 4% of gross sales for advertising and 3.5% of gross sales for royalties at the downtown store. On the other hand, the trustee argues that Burger King Corporation was entitled to no administrative expense priority due to the fact that the franchise contract was terminated prior to the commencement of the bankruptcy proceedings. Additionally, the trustee contends that the advertising and royalty expenses were not actual and necessary expenses for preserving the estate; according to the trustee, whatever benefit the estate derived from the continued use of the

Burger King trademark (*e.g.*, the sign and the product names) was a consequence of Burger King's failure to seek a stay, not of the estate's request to remain associated with the Burger King name. Both parties' arguments fail to convince the court to reverse the bankruptcy court's well-reasoned decision.

■ The parties agree that the franchise agreement was terminated prior to the commencement of the bankruptcy proceedings. Consequently, neither the bankruptcy court nor this court can resurrect and apply the terms of the terminated contract. *See, e.g., In re Maxwell*, 40 B.R. 231, 236 (N.D.Ill.1984); *R.S. Pinellas Motel Partnership v. Ramada Inns, Inc.*, 2 B.R. 113, 53 A.L.R.Fed. 611, 616 (Bankr.M.D.Fla. 1979); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 176 (5th Cir.1972) (Bankruptcy Act case). Nevertheless, the court may use the contract as a reference for calculating the amount of the administrative claim, and " 'absent any evidence to the contrary, the court may presume that the contractual [amount] is a fair and reasonable charge....' " *In re William H. Herr, Inc.*, 61 B.R. 252, 254 (Bankr.E.D.Pa.1986) (quoting *In re C & L Country Market of New Market, Inc.*, 52 B.R. 61 (Bankr.E.D. Pa.1985)).

■ In its decision to award Burger King Corporation an administrative expense for the estate's use of the Burger King trademark in an amount less than that provided for in the franchise agreement, the bankruptcy court carefully balanced the benefits conferred on the estate and the detriments the estate suffered because of the terminated agreement. Because the trustee successfully operated the two restaurants using Burger King Corporation's trade and service marks, bringing in gross sales of over $630,000 in a four month period, the benefit the estate derived from the use of the Burger King name is undeniable. The restaurants did not receive all of the benefits of a Burger King franchise, however. For example, the supplier required the trustee to pay for each shipment by cashier's check, and refused to supply the restaurants with two new products ("Burger Bundles" and "Bagel Sandwiches"). Furthermore, the estate did not advertise locally, and the national advertising campaign for the two new products to which the restaurants were denied access did not benefit the estate.

Given the above facts, the bankruptcy court correctly concluded that the estate's use of the Burger King trademark was beneficial, *Dakota Industries*, 31 B.R. at 26, and that the presumptive reasonableness of the franchise contract rates for advertising and royalties was sufficiently overcome by the fact that the estate did not receive all of the benefits it would have received had the franchise agreement still been in effect. The bankruptcy court's decision was far from being arbitrary; instead, it represents a fair and reasonable award of administrative expenses: the award recognized the economic benefit conferred on the estate by the continued use of the Burger King trademark and compensated Burger King Corporation for "actual" and "necessary" expenses.

IT IS THEREFORE ORDERED that the bankruptcy court's January 29, 1988, Memorandum and Order is affirmed. The appeals of Burger King Corporation and Trustee Michael H. Berman are denied.