## In re BRIDGEPORT PLUMBING PRODUCTS, INC., EIN: 58–1563976, Debtor.

### Bankruptcy No. 93–60312.

United States Bankruptcy Court,
M.D. Georgia,
Thomasville Division.

Sept. 9, 1994.

Robert L. Kraselsky, Albany, GA, for Clarklift South, Inc.

Thomas D. Lovett, Albany, GA, for debtor.

Charles S. Glidewell, Asst. U.S. Trustee, Tallahassee, FL.

### *MEMORANDUM OPINION*

JOHN T. LANEY, III, Bankruptcy Judge.

On April 28, 1994, the court held a hearing on the objection of Debtor to the request of Clarklift South, Inc. for payment of administrative expenses in connection with a certain lease dated February 28, 1990, of two forklifts by Debtor. The court also considered the limited objection of Congress Financial Corp. to such request for administrative expenses. At the conclusion of the hearing, the court took the matter under advisement to allow the parties the opportunity to submit briefs on the issue of how to measure Clarklift South's administrative expense claim. Clarklift South contends that it should be paid the minimum monthly amounts under

the lease from the date of the filing of the bankruptcy petition until the date the lease was rejected. At the hearing, counsel for Clarklift South indicated that since Debtor's bankruptcy petition was filed on September 2, 1993, the amount of administrative expenses requested is actually $4,064.03 and not $5,888.27, which is the amount set forth in Clarklift South's Request for Payment of Administrative Expenses filed with the court on March 29, 1994 (which includes the August lease payment and related late charges). Debtor contends that Clarklift South is not entitled to any administrative expense claim. The court, having considered the briefs submitted by the parties, now renders this memorandum opinion. For the reasons stated herein, the court finds that Clarklift South is entitled to an administrative expense claim in the amount of $100.00.

On September 2, 1993, Debtor filed its Chapter 11 petition. At the time of the October 29, 1993, § 341(a) first meeting of creditors, Clarklift South's counsel recalls that the president of Debtor, Mr. Phillips, stated an intention to retain the forklifts. Mr. Phillips nor Debtor's counsel recalls this discussion but they also do not deny it. At the request of Debtor's counsel, counsel for Clarklift South prepared and mailed a letter to Debtor's counsel dated November 30, 1993, indicating the amount needed to bring Debtor's account current. In early December, Debtor decided to reject the lease. Counsel for Clarklift South signed a consent order on December 22, 1993, agreeing to Debtor's rejection of the lease. The signed consent order was returned to Debtor's counsel, who, on December 23, 1993, filed the consent order with the court requesting approval of the rejection of the lease. The court signed the consent order on December 23, 1993. Soon thereafter but before the end of December, 1993, Clarklift South picked up the forklifts.

Under the lease, the two forklifts were leased for a total of $1,250 per month. Debtor could not use either of the forklifts more than 375 hours per quarter (125 hours per month) without incurring a charge in addition to the forklift's monthly lease payment. The average cost per hour if the large forklift was not used more than 375 hours per quarter was approximately $6.00. The average cost per hour if the small forklift was not used more than 375 hours per quarter was approximately $4.00. Thus, the average cost per hour if each of the two forklifts was not used more than 375 hours per quarter was a total of $10.00. During the hearing, the parties stipulated that the forklifts were used for only ten hours between the period of filing the bankruptcy petition and rejecting the lease. However, the evidence presented, including the testimony of Mr. Phillips, was not clear as to whether the stipulated ten hours of use was for the forklifts together or separately. Mr. Phillips testified that use of the forklifts was limited after September 2, 1993, since the business was not in operation and there was no need to move heavy boxes or equipment. The rejection of the lease occurred pre-confirmation. The parties also stipulated that any administrative expense claim Clarklift South might have would be subordinated to Congress Financial's post-petition claim.

Debtor relies upon the Eleventh Circuit's decision of *In re Airlift Int'l, Inc.*, 761 F.2d 1503 (11th Cir.1985), which is discussed below, as authority for its contention that Clarklift South is not entitled to an administrative expense claim, but that the breach of the lease should be deemed to have occurred pre-petition under § 502(g) of the Bankruptcy Code.

Clarklift South contends that it has an administrative expense claim for the lease of the forklifts, and that *Airlift Int'l* is not applicable in that the entire decision is based on a post-petition stipulation pursuant to § 1110(a) of the Bankruptcy Code which obligated the debtor to pay monthly installments coming due.

Debtor contends, by pointing out *Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta )*, 789 F.2d 1530 (11th Cir.1986), that even if Clarklift South is entitled to an administrative expense claim, the amount of such claim should be limited to the actual benefit received by Debtor's estate as a result of the actual use of the forklifts. Therefore, Debtor argues that since the forklifts were used for

only ten hours, and the forklifts' monthly rental rate for no more than 375 hours per quarter (125 hours per month) was $1,250, the amount of the administrative expense claim should only be $100.00.

Clarklift South urges the court to follow the decisions which hold that pursuant to § 503(b)(1)(A) of the Bankruptcy Code, in connection with a lease which is ultimately rejected by a Chapter 11 debtor, an administrative expense claim for the rental of the property is computed by reference to the reasonable rental value of the property and not to its benefit, if any, to the debtor. *See In re Curry Printers*, 135 B.R. 564 (Bankr. N.D.Ind.1991); *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982). Clarklift South argues that to hold otherwise would compel the creditor to move immediately to obtain a court order requiring the debtor to assume or reject an existing lease, which would result in a penalty to creditors who cooperate with debtors and give them time to resolve their financial difficulties.

The initial question to be decided by this court is whether Clarklift South is entitled to an administrative expense claim under § 503(b) of the Bankruptcy Code. Section 503(b) of the Bankruptcy Code provides that: "After notice and a hearing, there shall be allowed, administrative expenses, ... including—(1)(A) the actual, necessary costs and expenses of preserving the estate, ..." 11 U.S.C.A. § 503(b)(1)(A) (West 1993).

Debtor argues, in reliance on the Eleventh Circuit's decision in *Airlift Int'l*, that Clarklift South is not entitled to an administrative expense claim, but to a pre-petition claim under § 502(g) of the Bankruptcy Code.

Our review indicates there are three *general* situations involving executory contracts or unexpired leases where the effect of a breach by the debtor or trustee must be considered: (1) where the trustee elects not to assume an ongoing executory contract or unexpired lease and rejects it, (2) where the trustee assumes an ongoing executory contract or unexpired lease prior to confirmation of the plan, and (3) where the trustee during reorganization proceedings enters into a new executory contract.

In the first instance where the contract is not assumed prior to confirmation, the breach of the executory contract or unexpired lease is deemed to have occurred pre-petition, giving rise to a pre-petition claim under section 502(g), but not an administrative expense under section 503(b). *Airlift Int'l*, 761 F.2d at 1508–09 (emphasis added) (footnote omitted).

It appears clear to this court that the three listed situations in *Airlift Int'l* indicate the general rule, rather than an absolute rule. The Eleventh Circuit does not address the administrative expense issue in the context where, as here, the leased equipment is used post-petition by the debtor and the lease is ultimately rejected by the debtor prior to confirmation. The Eleventh Circuit, though, in discussing § 365 of the Bankruptcy Code, stated:

Where the debtor is a lessee, the estate is liable for the reasonable value of the use and occupancy of the property during the period between filing and assumption or rejection of the unexpired lease. *See In re Rhymes, Inc.*, 14 B.R. 807, 808 (Bkrtcy. D.Conn.1981); 2 Collier on Bankruptcy, ¶ 365.03[2] (15th ed. 1979). While "[t]he rent reserved in the lease is presumptively a fair rental ...," the court may authorize a different figure based upon evidence of the actual use by the debtor. *See In re Peninsula Gunite, Inc.*, 24 B.R. 593, 595 (9th Cir. BAP 1982).

*Airlift Int'l*, 761 F.2d at 1508.

█ It is well established that once an executory contract or unexpired lease is rejected, the creditor may file an administrative expense claim for the "reasonable value of the use and occupancy" by the trustee of the creditor's property during the time before rejection. 2 Collier on Bankruptcy ¶ 365.03 at 365–36 (15th ed. 1992). *See Philadelphia Co. v. Dipple*, 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651, 655 (1941) (during the period when the trustee is deciding whether to accept or reject a lease contract, he is liable to pay only "the amount due for use and occupation"); *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 126 (2d Cir.1960) (according priority only for actual use and

occupancy; fair value of conferred benefit is based on the "equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him").

With respect to equipment leases, many courts have disallowed a claim for administrative expense status after finding that no actual use of the leased equipment was made by the debtor or trustee, thereby resulting in no benefit to the debtor's estate. *See General American Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d 1130 (10th Cir.1993) (disallowed administrative expense claim; held that neither potential to benefit Chapter 11 debtor's estate nor mere possession was sufficient to grant administrative expense status for accrued rent under rail car lease agreement); *In re Dixie Fuels, Inc.*, 52 B.R. 26 (Bankr.N.D.Ala.1985) (since Chapter 11 debtor made no actual use of leased rock trucks prior to rejecting leases, payments due were not actual, necessary costs of preserving the estate); *In re Pickens–Bond Constr. Co.*, 83 B.R. 581 (Bankr. E.D.Ark.1988) (valued administrative expense at zero since Chapter 11 debtor did not use leased airplane between filing the petition and rejecting the lease); *In re Carmichael*, 109 B.R. 849 (Bankr.N.D.Ill.1990) (lessor of irrigation equipment could receive only, as an administrative expense, the amount the Chapter 12 estate actually benefitted by possession of the equipment; since the equipment was not used, thereby conferring no benefit to the estate, the claim for administrative expense was not allowed); *In re Intran Corp.*, 62 B.R. 435 (Bankr.D.Minn. 1986) (Chapter 11 debtor obligated only for actual use made of leased computer equipment and software; since leased property was not used, no administrative expense claim was allowed); *In re Templeton*, 154 B.R. 930 (Bankr.W.D.Tex.1993) (claim for rent by equipment lessor not entitled to administrative expense status where no benefit to Chapter 12 estate shown); *In re Vyvyan*, 55 B.R. 691 (Bankr.E.D.Wisc.1985) (no administrative expense status due to nonuse of leased farm equipment rendering no benefit to Chapter 7 debtor's estate).

■ This court finds that since Debtor actually used one or both of the forklifts (as stipulated by the parties) during the period between filing the bankruptcy petition and rejecting the lease, Clarklift South is entitled to an administrative expense claim for such use.

The court now must focus on the proper valuation of Clarklift South's administrative expense claim. Courts have varied in their interpretations of how an administrative claim should be valued. Upon review of the relevant law in this area, the court realizes that there appears to be three lines of cases which address the determination of the reasonable value of a creditor's administrative expense for the use and occupancy of leased property by a debtor or trustee.

One line of cases restricts a creditor's claim to the extent of the actual benefit received by the debtor's estate from the actual use of the leased property, with a rebuttable presumption that the lease terms represent the fair value of the benefit. The debtor or trustee can rebut the presumption by showing that the actual benefit to the estate is less than the lease amount based upon the actual use of the leased property. Only after it is established that the debtor's estate actually benefitted from the transaction may a court estimate the amount of the "benefit" by considering the reasonable use of the property. Courts often adopt this approach where the property is easily divisible into discreet or leasable units by which to measure the claim. *See Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta)*, 789 F.2d 1530 (11th Cir.1986) (administrative expense allowed for only seventeen days of use by Chapter 7 trustee since after use for seventeen days, trustee made no further use of the subscription television service until rejection of the lease at the end of the 60–day period allowed under § 365(d)(1) of the Bankruptcy Code); *In re Lease–A–Fleet, Inc.*, 140 B.R. 840 (Bankr. E.D.Pa.1992) (reasonable rental value of automobiles based on number of automobiles actually subleased by Chapter 11 debtor when debtor was subleasing automobiles it had previously leased from creditor); *In re N–Ren Corp.*, 68 B.R. 404 (Bankr.S.D.Ohio

1986) (creditor entitled to administrative expense priority for retention by Chapter 11 debtor of leased railroad cars based on number of actual rail car shipments when debtor leased 61 railroad cars but only used them for a limited number of shipments; debtor could have leased necessary railroad cars for only those shipments actually made; found the rate for "reasonable value" to be the same as that secured from creditor).

A second line of cases values the creditor's claim without regard to any use of the leased property whatsoever and essentially eliminates any requirement of a benefit to the debtor's estate. Such approach focuses on the compensation of the creditor for his loss during the pre-rejection period. Courts following this approach have applied an objective method based on the fair and reasonable value of the lease on the open market, with a rebuttable presumption that the lease terms represent the fair value of the administrative expense claim. The debtor or trustee can rebut the presumption by showing that the market rate for the lease of similar property is less than the rate of the lease in effect. Often, this method of valuation has been applied where the property was not or could not be used in discrete, leasable units. Decisions using the fair market valuation approach have expressed concern about the burden the actual use method places on the creditor who should not be penalized by the debtor's desire to reduce administrative expenses by using the leased property at less than full capacity. Additional reasoning in such decisions includes reference to the availability of the leased property for use by the debtor or trustee and the creditor's right to assume that until rejection of the lease, the property is being used for the purpose for which it was leased and that the debtor or trustee will pay the reasonable value of the property measured by such use. *See Thompson v. IFG Leasing Co. (In re Thompson )*, 788 F.2d 560 (9th Cir.1986) (considered the fair and reasonable value of the leased farm equipment (Harvestore System) on the open market as controlling in determining allowable administrative expense; Chapter 11 debtor's testimony regarding actual use was largely irrelevant when equating reasonableness with fair market value); *In re Curry Printers, Inc.*, 135 B.R. 564 (Bankr. N.D.Ind.1991) (based administrative expense claim on "reasonable rental value" instead of "actual use" in Chapter 11 case where lessor's claim was based on two photocopy machines leased to debtor); *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982) (equitable method based on benefit to Chapter 11 debtor was not applied; valued post-petition use of vans based on amount of the lease payments notwithstanding debtor's claim of nonuse of the leased vans; found that a debtor is generally aware that a bankruptcy will be necessary and should plan in advance to decide which leases should be retained).

A third line of cases has rejected the strict application of either the actual use/resulting benefit method or the fair market value method and instead has applied a method that is based on the nature of the property and its use. Therefore, if the nature or use of the property can be divided into discreet, leasable units, then the actual use method is applied. If not, the fair market value method is used. *See Litho Specialties, Inc. v. Fleet Credit Corp. (In re Litho Specialties, Inc.)*, 154 B.R. 733 (D.Minn.1993) (printing press lease valued at fair market value since it involved indivisible pieces of equipment and no evidence was introduced to show use by Chapter 11 debtor was limited to a specified period of time).

This court believes it is clear that the Eleventh Circuit has adopted the actual use/resulting benefit method. A relevant case decided by a bankruptcy court in the Eleventh Circuit is *In re Dixie Fuels, Inc.*, 52 B.R. 26 (Bankr.N.D.Ala.1985). The court found that where a leased truck was not used post-petition by the Chapter 11 debtor and the lease was rejected prior to confirmation, the lessor was not entitled to an administrative expense claim. *Dixie Fuels*, 52 B.R. at 27. The *Dixie Fuels* court quoted the same portion of *Airlift Int'l* that Debtor finds relevant. *Id.* However, the court in *Dixie Fuels* implied that if the trucks had been used there would have been an administrative expense based on the "*actual* use by the debtor" and "actual value received by the estate." *Id.* The *Dixie Fuels* court stated:

The Court may authorize a figure different from that reserved in the lease based upon evidence of the *actual* use by the debtor. *Id.* (citing *In re Peninsula Gunite, Inc.*, 24 B.R. 593 (9th Cir. BAP 1982)). Claims under 11 U.S.C. Section 503(b)(1)(A) (1978) are judged by the actual value received by the estate. *In re Rhymes, Inc.*, 14 B.R. 807, 808, 8 B.C.D. 636, 637, 5 C.B.C.2d 478, 480 (Bkrtcy. D.Conn.1981). The liability for actual use and occupancy is based upon the equitable principle of preventing unjust enrichment, rather than compensation of the creditor for loss to him. *Id.*

. . . .

Because Dixie made no use of the five rock trucks prior to rejecting the leases, the Court determines that the trucks were of no benefit to the estate. Therefore, the payments due the lessor under the lease were not "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. Section 503(b)(1)(A) (1978); *cf. In re Rhymes, Inc.*, 14 B.R. 807, 8 B.C.D. 636, 5 C.B.C.2d 478 (Bkrtcy.D.Conn.1981).

*Id.*

Not long after *Dixie Fuels* was decided, the Eleventh Circuit Court of Appeals was faced with a request for administrative expenses where the trustee *had* used leased property during the pre-rejection period. In *Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta )*, 789 F.2d 1530 (11th Cir.1986), the debtor entered into a contract with Broadcast for the provision of subscription television. *Subscription Television*, 789 F.2d at 1531. Broadcast was obligated to provide the debtor with a scrambled television signal during certain hours of the day in return for payment from the debtor. *Id.* The debtor filed a Chapter 11 bankruptcy case which was later converted to a Chapter 7 bankruptcy. *Id.* The Chapter 7 trustee continued the operations of the debtor for seventeen days, but kept the contract as an assumable, executory contract for the 60–day period allowed under § 365(d)(1) of the Bankruptcy Code. *Id.* The contract was rejected by operation of law at the end of the 60–day period. *Id.*

The bankruptcy judge allowed an administrative expense for the entire 60–day period. *Id.* The district court on appeal held that administrative expense priority did not exist for that part of the claim which exceeded the seventeen-day period of operation and actual use by the Chapter 7 trustee. *Id.* The district court's ruling was summarily but clearly affirmed by the Eleventh Circuit Court of Appeals. *Id.* at 1532. *See Broadcast Corp. of Georgia v. Broadfoot*, 54 B.R. 606 (N.D.Ga.1985), *aff'd sub nom. Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta )*, 789 F.2d 1530 (11th Cir.1986). The Eleventh Circuit then went on to state an important standard in its circuit, which must be applied by this United States Bankruptcy Court:

> The priority of an administrative expense is the highest. 11 U.S.C. § 507(a)(1). The allowance of such a priority is to be carefully considered, only after notice and hearing. 11 U.S.C. § 503(b). That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more likely salable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate."
>
> To accord a creditor holding an executory contract an administrative priority for every claim arising thereunder during the sixty-day section 365(d)(1) period would produce a strained and unintended construction of that statute. Each case must be judged subjectively. The treatment of similar contracts may vary with the facts of the case, the trustee's need for the subject matter of the executory contract, and the benefits to be derived by the bankrupt estate.

*Subscription Television*, 789 F.2d at 1532. Quoting the district court's opinion, the Eleventh Circuit stated that "there must be an actual, concrete benefit to the estate before a claim is allowable . . ." as an administrative expense. *Id.* (quoting *Broadcast Corp. of*

*Georgia v. Broadfoot,* 54 B.R. 606, 613 (N.D.Ga.1985), *aff'd sub nom. Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta ),* 789 F.2d 1530 (11th Cir.1986)).

This court realizes that *Subscription Television* arises out of a Chapter 7 proceeding, but believes its interpretation of 11 U.S.C.A. § 503(b)(1)(A) of the Bankruptcy Code is also applicable to a Chapter 11 case. In fact, several Chapter 11 cases have followed *Subscription Television's* view that a claim is allowed as an administrative expense only if there was actual use of the creditor's property which resulted in an actual benefit to the debtor's estate. *See, e.g., Kinnan & Kinnan Partnership v. Agristor Leasing,* 116 B.R. 162 (D.Neb.1990); *In re Pickens–Bond Constr. Co.,* 83 B.R. 581 (Bankr.E.D.Ark. 1988); *In re Intran Corp.,* 62 B.R. 435 (Bankr.D.Minn.1986); *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 891 (Bankr.E.D.Pa.1987).

The court notes that the Eleventh Circuit, as evidenced by its decision in *Subscription Television,* does not believe that Congress intended, in enacting § 503(b)(1)(A) of the Bankruptcy Code, to give certain creditors preferential treatment by creating a broad category of administrative expenses. This court believes that the use of the words "actual" and "necessary" in § 503(b)(1)(A) of the Bankruptcy Code was not accidental but that such words were included to impose a requirement that the debtor's estate be actually benefitted. When interpreting a statute, a court's analysis should begin with the actual language of the statute and be consistent with the plain meaning of the statutory language. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–43, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290, 298–99 (1989); *Davis v. Davis (In re Davis ),* 911 F.2d 560, 562 (11th Cir.1990).

Furthermore, the court notes that keeping administrative expenses to a minimum furthers the debtor's rehabilitation. The wording of § 503(b)(1)(A) defining administrative expenses looks at the use of property from the debtor's perspective and requires that the debtor pay only for the actual use and benefit obtained from the leased property.

Other provisions of the Bankruptcy Code look at such transactions from the creditor's perspective and in fact put the burden on creditors to protect their interests. *See* 11 U.S.C.A. § 362(d)(1) (West 1993) (creditor can move for relief from the automatic stay); 11 U.S.C.A. § 363(e) (West 1993) (creditor can seek adequate protection); 11 U.S.C.A. § 365(d)(2) (creditor can move for court to set an early date by which debtor must assume or reject an executory contract or unexpired lease).

The court is persuaded that acceptance of Clarklift South's argument would make a debtor liable for its full contract obligations on executory contracts and unexpired leases before acceptance or rejection, which in turn would create tremendous pressure on the debtor to reject as many contracts and leases as soon as possible. Such result would be contrary to the spirit and purpose of the Bankruptcy Code, which allows the debtor to assume or reject an executory contract or unexpired lease at any time before confirmation of a plan, unless a party to the executory contract or unexpired lease forces an earlier decision. *See* 11 U.S.C.A. § 365(d)(2) (West 1993).

Therefore, after reviewing relevant Eleventh Circuit decisions and noting similar decisions in several other jurisdictions, and upon consideration of the plain meaning rule of statutory interpretation and the spirit of the Bankruptcy Code, the court finds that the reasonable value of Clarklift South's administrative expense claim against Debtor's estate should be determined by considering the actual benefit conferred on Debtor's estate as a result of the actual use of the forklifts by Debtor.

■ The burden of proving entitlement to an administrative expense claim was on Clarklift South, to prove not only that the expense was "actual" and "necessary," but also the reasonable value of the expense. The parties have stipulated that Debtor actually used the forklifts for only ten hours between the period of filing the bankruptcy petition and rejecting the lease. The forklifts conferred no further benefit to Debtor's estate since they remained idle for the remainder of the time they were in Debtor's

possession. The court notes that in *Broadcast Corp.*, the district court found the amount of the administrative expense claim to be the amount by which the debtor's estate was benefitted for the seventeen days the trustee actually used the subscription television service provided by Broadcast. *Broadcast Corp.*, 54 B.R. at 613. The trustee conceded that the court should use the full contract rate in arriving at a daily lease rate. *Id.* The court is persuaded that the reasonable value of the administrative expense as determined by the benefit conferred on Debtor's estate as a result of the actual use of the forklifts, absent any evidence to the contrary, is represented by the hourly rental amounts set forth in the lease. According to the lease, Debtor could not use either of the forklifts more than 375 hours per quarter (125 hours per month), without incurring a charge in addition to the lease payments (no evidence was introduced to show that Debtor ever used either or both forklifts more than 375 hours per quarter). The average cost per hour if the large forklift was not used more than 375 hours per quarter was approximately $6.00. The average cost per hour if the small forklift was not used more than 375 hours per quarter was approximately $4.00. The evidence presented to the court was not clear whether the stipulated ten hours of use was for the forklifts together or separately. The court has decided to calculate the reasonable value of the administrative expense as follows: $100.00 (ten hours of use at the large forklift rate of $6.00 per hour and ten hours of use at the small forklift rate of $4.00 per hour).

An order in accordance with this Memorandum Opinion will be entered.

### ORDER

In accordance with the Memorandum Opinion issued this date, the court finds that Clarklift South, Inc. is entitled to an administrative expense claim in the amount of $100.00, and authorizes Debtor to pay such claim when funds are available to pay expenses of that priority. The court does not authorize the use by Debtor of Congress Financial Corp.'s cash collateral or the subordination of Congress' post-petition claim to Clarklift South's administrative claim.

SO ORDERED.