In re **BEVERAGE CANNERS INTERNATIONAL CORP.,** et al., Debtors.

No. 00–11234–BKC–RAM.

United States Bankruptcy Court, S.D. Florida.

Nov. 8, 2000.

Paul Orshan, Duane, Morris & Heckscher LLP, Miami, for the Nature Conservancy.

Thomas R. Lehman, Tew, Cardenas, Rebak, et al., L.L.P., Miami, for the Debtor.

## *MEMORANDUM OPINION AND ORDER GRANTING THE NATURE CONSERVANCY'S MOTION FOR ALLOWANCE AND PAYMENT OF CHAPTER 11 ADMINISTRATIVE EXPENSE CLAIM*

ROBERT A. MARK, Chief Judge.

A creditor must demonstrate that a debtor actually benefitted from postpetition performance of an executory contract in order to sustain an administrative expense claim under § 503(b) of the Bankruptcy Code (the "Code"). In this case, the Nature Conservancy ("Nature") filed a Motion for Allowance and Payment of Chapter 11 Administrative Expense Claim (the "Motion") seeking an administrative expense in the full amount of the minimum royalty that the debtors, Beverage Canners International Corporation, et al. (the "Debtors"), agreed to pay for the use of certain of Nature's trademarks (the "Trademarks") under a licensing agreement (the "Agreement").

The Debtors claim that they did not receive actual economic benefit from the postpetition use of the Trademarks and that Nature did not offer proof of any actual benefit. This Court finds that proof of the Debtors' actual economic benefit was not necessary and that Nature satisfied its burden by showing that the Debtors received and used all of the consideration bargained for under the Agreement. Therefore, Nature's motion for allowance of an administrative expense is granted.

## *FACTUAL AND PROCEDURAL BACKGROUND*

The Debtors operated a business of manufacturing, selling and distributing branded and private label soft drinks and water. Nature is a nonprofit organization organized for the purpose of preserving plants, animals and natural communities by protecting the land and water they need to survive. On December 15, 1997, the Debtors entered into the Agreement with Nature, under which Nature granted the Debtors a license to display the Trademarks on the labels affixed to certain bottled water products sold by the Debtors. In order to include the Trademarks on these labels, the Debtors had specific printing plates created, the replacement cost of which is estimated by the Debtors to be $60,000.00. The Agreement has a term of five (5) years, and in consideration for the right to affix and otherwise utilize the Trademarks, Nature was entitled to a guaranteed minimum annual royalty payment of $100,000.00, to be paid quarterly in $25,000.00 increments. The terms of the Agreement also included escalated payment amounts dependant on sales of licensed products.

The Debtors filed their voluntary petitions for bankruptcy protection under chapter 11 of the Code on February 17, 2000 (the "Filing Date"). From the Filing Date until September 15, 2000, when the Debtors consummated the sale of their water business to a third party and the Court deemed the Agreement rejected (the "Rejection Date"), the Debtors continued to utilize the Trademarks in the same manner as they did prepetition. Based upon this postpetition use, Nature

alleges an administrative claim in the amount of $71,153.85, consisting of the postpetition royalty payments due for two quarters plus the *pro rata* share of a third quarter, through the Rejection Date.[1] In the Motion, Nature alleges that beginning January 1, 2000 until June 30, 2000, the Debtors sold 24,164 cases of Naturalle Mountain Spring Water, which is a product covered by the Agreement and one that utilized the Trademarks. The Debtors concede that product was sold postpetition using the Trademarks, but argue that the use of the Trademarks provided no measurable benefit, particularly in light of the limited sales.

The parties presented argument on the Motion at a hearing held on August 31, 2000. The Court has considered the Motion, a supplemental motion heard by this Court on October 5, 2000, the written response filed by the Debtors and the arguments presented at the August 31 hearing, and has independently reviewed relevant case law.

### DISCUSSION

One of the paramount policy concerns in bankruptcy is the limitation of administrative expenses in an effort to increase the value of the estate for the benefit of the debtor and creditors. Section 503(b) of the Code, which sets forth the requirements for a postpetition expense to qualify for an administrative priority, states in part that allowed administrative expenses shall include "the actual, necessary costs and expenses of preserving the estate ...". 11 U.S.C. 503(b)(1)(A). The Eleventh Circuit has interpreted this Code provision to require not only that the expense be "actual" and "necessary", but also that there be a concrete benefit to the debtor's estate. *See In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986). Section 503 priorities are to be construed narrowly, *see In re*

*Colortex Industries, Inc.,* 19 F.3d 1371, 1377 (11th Cir.1994), and the burden of establishing whether an expense is entitled to an administrative priority falls squarely on the movant. *See In re Bridgeport Plumbing Products, Inc.,* 178 B.R. 563 (Bankr.M.D.Ga.1994); *In re Fulwood Enterprises, Inc.,* 149 B.R. 712, 715 (Bankr. M.D.Fla.1993).

Here, the Debtors assert that Nature has not satisfied its burden to demonstrate that postpetition benefit was provided to the Debtors by merely showing postpetition use of the Trademarks. As such, the Debtors argue that Nature is not entitled to an administrative expense. It is undisputed that there was ongoing and continuous use by the Debtors of the Trademarks until the Rejection Date; the only question is whether there was benefit arising from the use. The issue is, simply stated: What must Nature show to demonstrate "benefit" to the Debtors sufficient to establish an administrative claim under the Agreement. More specifically, did Nature satisfy its burden by demonstrating that the Debtors received all of the rights provided (and bargained for) under the Agreement? Or, as the Debtors argue, does the Motion fail absent proof that the Debtors derived actual and measurable economic benefit from the use of the Trademarks?

The concept of "benefit" has not been specifically defined in the Code or case law, but the Eleventh Circuit's decision in *Subscription* provides an analysis of § 503(b)(1)(A) and the "benefit" requirement. *See Subscription,* 789 F.2d 1530. In that case, the creditor requesting an administrative expense had a prepetition contract with the debtor to provide certain scrambled television signals to the debtor for a certain number of hours per day. Postpetition, the chapter 7 trustee continued the debtor's operations for seventeen days and only utilized the broadcast signals for that period of time. *See id.* at

---

1. Nature seeks quarterly royalty payments starting with the quarter beginning January 1, 2000. As stated *infra,* this Court finds that the obligations dealt with by this Order began on February 17, 2000, the Filing Date.

1531. However, the contract was not rejected and remained executory, and therefore assumable and assignable, for the full sixty day period until it was rejected by operation of law pursuant to § 365(d)(1) of the Code. *See id.* The Eleventh Circuit ruled that the creditor was only entitled to an administrative priority for the seventeen days in which the debtor received "actual benefit" under the executory contract. The court reasoned that "[t]hat which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of the preserving the estate and should be accorded the priority of an administrative expense." *Id.* at 1532. The court added to this principle, stating that an administrative priority should be awarded only to the extent that "the actual use . . . represents benefit to the bankruptcy estate." *Id.*

Although *Subscription* was relied upon by the Debtors, the applicable reasoning falls squarely in line with Nature's position. In *Subscription,* the foundation upon which the court's § 503 analysis rested was the postpetition "use" by the debtor, with the "benefit" of such use clearly flowing directly therefrom. The distinction made by the Eleventh Circuit, allowing an administrative priority for the seventeen (but not the full sixty) days after the commencement of the case, was that after the seventeen days of actual use, the trustee did not operate the business and accordingly did not use the creditor's broadcast signal. During the forty-three day period, all that remained was the "potential for benefit" through a possible assignment of the executory contract. *See id.* at 1531. It was this minimal (if at all) advantage or right, absent any benefit stemming from use, which was found to be insufficient to support an administrative priority expense.

Unlike the trustee in *Subscription,* the Debtors here continued to use the Trademarks in the contracted-for capacity from the commencement of the case through the Rejection Date and therefore received the exact type of benefit bargained for. No

potential under the contract was left unused. The Eleventh Circuit's analysis frames a broader concept of "benefit" than that which the Debtors are arguing—one which is inclusive of the opportunity (or ability) to give value to a debtor based on the full use of the contractual rights. *See In re Hillsborough Holdings Corp.,* 207 B.R. 299, 306 (Bankr.M.D.Fla.1997) (citing *Subscription,* and stating that the concrete benefits conferred on the debtor giving rise to an administrative expense included the debtor's "ability" to use certain items under an executory contract to possibly increase revenues).

█ The Debtors concede that they had full use of the Trademarks but urge the Court to deny the administrative expense claim because there was no measurable value received from the use. This Court rejects the notion that a bankruptcy court should independently value the consideration provided for under an executory contract where there is no contrary evidence to the bargained for contractual rate.

█ Presumptively, the value of consideration received under an executory contract is the amount set forth in such contract. *See In re B–K of Kansas, Inc.,* 99 B.R. 446, 448 (D.Kan.1989); *see also Diversified Services, Inc. v. Harralson,* 369 F.2d 93, 95 (5th Cir.1966); *In the Matter of Lackow Brothers, Inc.,* 18 B.R. 770 (Bankr.S.D.Fla.1982). The basis for such a presumption is that the parties are in the best position to negotiate the terms and value of the consideration. It logically follows that if a debtor makes full use of the services provided under a contract, the benefit to the debtor is the entire bargained for value pursuant to such agreement.

The Debtors propounded no evidence to rebut the presumption that the value received was the minimum royalty provided in the Agreement and it is unlikely that any such evidence could have been offered. The Debtors knowingly and willingly accepted full performance under the

contract by continuing to display the Trademarks after the commencement of the case and Nature is entitled to be paid for this use regardless of the impact on the Debtors' sales of bottled water. Clearly, any reduction of the amount payable to Nature based upon the level of the Debtors' sales would deprive Nature of the specific benefit that it bargained for, namely, a minimum royalty for the use of its Trademarks, no matter how many "trademarked" bottles were sold.[2]

Decisions awarding an administrative expense of less than the full contract amount typically involve less than full use of the contract rights. *See e.g. In re Bridgeport Plumbing Products, Inc.*, 178 B.R. 563 (Bankr.M.D.Ga.1994). There, although the lease was not rejected until more than three months after the filing date, it was stipulated by the parties that the equipment covered by the lease was only actually used postpetition for a total of ten hours. *See id.* at 569. The court determined the number of hours that the equipment could potentially be used per month and derived an hourly lease amount of $10.00. This number, multiplied by the total number of hours that the equipment was *actually* used, was the amount of the claim entitled to an administrative expense. *Bridgeport*, 178 B.R. at 570.

■ In *Bridgeport*, the court's determination of the appropriateness of an administrative priority was based on the actual number of hours of "use" employed by the debtor. *See id.* at 569–70. No such proration is appropriate or necessary in the instant case, as the Debtors made continuous and ongoing use of the Trademarks from the commencement of the case until the Rejection Date. The Debtors' argument that there was no resulting benefit defines "benefit" too narrowly, as it excludes the Debtors' bargained for opportunity for increased sales arising from the use, not any specific sales necessarily arising therefrom.[3] As noted above, the Agreement required minimum quarterly payments, regardless of sales.

The Debtors rely heavily on *In re B–K of Kansas, Inc.*, 99 B.R. 446 (D.Kan.1989), where a debtor was party to a franchise agreement with Burger King Corporation. The franchise agreement terminated prepetition but the trustee continued to operate the debtor's restaurants postpetition utilizing Burger King's trademarks and service marks. Burger King sought an administrative expense for the trustee's postpetition usage, which the court awarded, but for less than the full value of the contract. The reduction did not arise from a valuation by the court of the full consideration offered under the franchise agreement. Rather, the court found that while the trademarks were used postpetition, and accordingly postpetition benefit ran to the debtor, "the estate did not receive all of the benefits it would have received had the franchise agreement still been in effect." *Id.* at 448. The trustee did not have credit from suppliers, did not receive two new products and did not have the benefit of national advertising for these two new products.

The Debtors here argue that *B–K* supports a finding denying Nature's administrative expense claim if Nature cannot prove actual benefit from use of the Trademarks. This Court disagrees. Burger King was denied an administrative expense in the full amount of the contract royalty simply because the trustee did not receive all of the consideration under the contract. In practical terms, since the trustee in *B–K* did not receive the com-

---

**2.** The only bargained for connection between royalties and sales was the escalated royalty payments the Debtors would have been obligated to pay had sales reached certain levels. Nature's entitlement to these increased payments are not at issue here.

**3.** It is also worth noting that "benefit" does not mean "profit", and it is therefore unnecessary for profit to be proven in order for an administrative priority to be warranted for the postpetition use of another's property by a debtor. *See In re Patient Education Media, Inc.*, 221 B.R. 97, 103 (Bankr.S.D.N.Y.1998).

plete "benefit" as provided in the contract, the estate was not required to shoulder the weight of the entire burden. *B–K* does not hold or even suggest that had the trustee received the full benefit of the bargain, Burger King would have received less than its full contractual amount as an administrative priority.

Thus, *B–K* is easily harmonized with this Court's award of an administrative priority in favor of Nature. Here, as in *B–K*, the Debtors and Nature entered into an agreement for the use of trademarks in exchange for a set monetary payment scheme. But only in the instant case are the Debtors getting everything they bargained for. The whole of the consideration was provided to the Debtors, all of which was utilized in its fullest capacity. Therefore, there is no portion of the minimum royalty which should be denied an administrative priority.

The Debtors conclude their argument by stating that they did not choose to use the Trademarks postpetition because they believed them to be of value. Rather, the Debtors assert that they were financially hogtied into not rejecting the Agreement. Rejection of the Agreement would have terminated the Debtors' right to utilize the Trademarks, which would in turn have forced the Debtors to replace the plates used to imprint their labels. The Debtors' claim that such replacement would have cost them $60,000.00. Thus, according to the Debtors, their passive use of the Trademarks postpetition is not evidence of "benefit" justifying an administrative expense; it is simply an issue of saving money.

This re-labeling expense excuse for not rejecting the Agreement is not a valid defense to the Motion. In fact, it does more harm to the Debtors than it does good. First, by making this argument, the Debtors are acknowledging the receipt of a $60,000.00 postpetition benefit. The Debtors sold the water business without incurring the $60,000.00 expense they would have faced had they rejected the Agreement prior to the sale, which was their right under § 365 of the Code.

■ Second, determining whether a debtor has benefitted from postpetition performance under an executory contract does not require a court to analyze a debtor's motive for accepting performance. *Cf. In re Celotex,* 227 F.3d 1336 (11th Cir. 2000) (holding under Code § 503(b)(3)(D) that a creditor's motive should not be a part of a court's analysis as to whether actions provide benefit to the estate). It is irrelevant whether the Debtors chose to use the Trademarks to help market their water or to save the expense of re-labeling their bottles. The simple fact is that the Debtors accepted full performance from Nature upon the utilization of the Trademarks. As such, they must compensate Nature for this use by paying the full amount of the agreed upon minimum royalty.

■ Finally, simply because a debtor determines that it wishes to maintain the benefits of a contract and not the concurrent obligations does not mean that a debtor can, under Code § 365, accept the benefits and reject the burdens. It is black letter law that an executory contract must be either assumed in its entirety, *cum onere,* or completely rejected. *See Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1311 (5th Cir.1985); *In re Yates Development, Inc.,* 241 B.R. 247, 252–53 (Bankr.M.D.Fla.1999); *Collier on Bankruptcy* ¶ 35.03[1] (15th Ed. Revised). If the Debtors escape the burden of an administrative expense, they would in effect gain whatever benefit remained inherent in the use of the Trademarks, i.e., to include it on the bottles' labels, and would not have to pay for the use. This Court can not allow section 503 of the Code to be manipulated in order to achieve such a result.

### AMOUNT OF CLAIM

■ Nature seeks an administrative expense based upon the $25,000 quarterly

minimum royalty payments starting with the quarter beginning January 1, 2000. Although the Court is awarding full post-petition payment, the proper measure is to calculate the amount starting with the Filing Date (February 17, 2000) and continuing through the Rejection Date (September 15, 2000). This period consists of 201 days and results in an administrative expense award of $55,068.00 (201/365 × $100,000.00 annual royalty).

### CONCLUSION

■ A showing of postpetition use by a debtor of the entirety of consideration provided for under an executory contract is sufficient to satisfy a movant's burden under § 503 of the Code in a request for payment of an administrative expense priority. Absent contrary evidence, if the non-debtor claimant provides all of the consideration bargained for and the debtor receives and utilizes such consideration, the contractually specified amount is an appropriate valuation of postpetition "benefit" to a debtor.

Therefore, it is **ORDERED** as follows:

1. Nature's motion for an administrative priority based on the Debtors' usage of the trademark pursuant to the Agreement and the post-petition benefit arising therefrom is **GRANTED.**

2. Nature is awarded an administrative expense in the amount of $55,068.00.